Eric Winters, OSB 983790
eric@ericwinters.com
Eric C. Winters, Attorney
30710 SW Magnolia Ave
Wilsonville OR  97070
(503) 754-9096

Benjamin Barr, *pro hac vice* pending
ben@barrklein.com
BARR & KLEIN PLLC
444 N. Michigan Avenue Ste. 1200
Chicago, Illinois 60611
(202) 595-4671

Stephen R. Klein, *pro hac vice* pending
steve@barrklein.com
BARR & KLEIN PLLC
1629 K St NW Ste. 300
Washington, DC 20006
(202) 804-6676

Attorneys for Plaintiffs

DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| PROJECT VERITAS,<br>PROJECT VERITAS ACTION FUND,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>MICHAEL SCHMIDT, in his official capacity as Multnomah County District Attorney,<br>ELLEN ROSENBLUM, in her official capacity as Oregon Attorney General,<br><br>　　　　　Defendants. | Case No.:<br><br>VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

Plaintiffs Project Veritas and Project Veritas Action Fund respectfully bring this action for declaratory and injunctive relief, and complain as follows:

1. Project Veritas ("PV") and Project Veritas Action Fund ("PVA") are national media organizations that engage almost exclusively in undercover investigative journalism.

2. Because Oregon maintains an unconstitutional recording law, PV, PVA and their journalists are prohibited from exercising their First Amendment rights to engage in undercover newsgathering by recording their conversations with others without "specifically inform[ing]" them that the conversation is being obtained. *See* O.R.S. § 165.540(1)(c).

3. Plaintiffs' reports have garnered national attention, with many garnering hundreds of thousands of views and some receiving over ten million views. Their stories are often reported by other news outlets. Through their undercover journalism, PV and PVA are able to educate and inform the public about newsworthy topics of public concern and government accountability.

4. PV and PVA's undercover newsgathering and reporting could result in criminal charges if undertaken in Oregon. Plaintiffs would focus their efforts on several projects within the state related to government oversight and investigating protest movements, but are restrained by an overbroad statute prohibiting most secret and open recording of oral communications. *See* O.R.S. § 165.540.

5. Based on past experience, PV and PVA have found that announcing their recording efforts has caused individuals to refuse to talk or to even distort their story. PV and PVA have uncovered newsworthy matters to report through open and secretive recording of conversations, often in areas held open to the public such as voting places, sidewalks, and

hotel lobbies. Without using these techniques, Plaintiffs are unable to exercise their First Amendment rights to engage in undercover newsgathering and journalism in Oregon.

6. Across the United States, First Amendment interests in free speech and a free press have provided ample protection to investigate and report issues of public concern. This protection includes preventing recording laws from going beyond the legitimate protection of individual privacy. Decisions in the United States Court of Appeals for the Ninth Circuit have curtailed such abuses on a case-by-case basis. *See, e.g.*, *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (there is a "First Amendment right to film matters of public interest"); *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061–62 (9th Cir. 2010) (acts leading to expression are protected under the First Amendment); *Animal Legal Defense Fund v. Wasden*, 878 F.3d 1184, 1204 (9th Cir. 2018) (Idaho law making it illegal to record agricultural operations without consent prohibited the discussion of an entire topic and was unconstitutional). Section 165.540 cannot be reconciled with this precedent and the First Amendment.

7. At this moment in American history, many citizens are concerned about disruptive protesting, racial relations, and police accountability. PV and PVA require injunctive and declaratory relief so that they may investigate these issues in Portland, learn the truth about these matters, and report them to the public. Only one method allows them to exercise their First Amendment rights safely and effectively: secret recording or, at the very least, obtaining conversations without specifically informing all participants.

## **JURISDICTION AND VENUE**

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the First and Fourteenth Amendments to the Constitution of the United States. This

Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, and the Civil Rights Act, 42 U.S.C. § 1983.

9. This Court has jurisdiction to award attorneys' fees, in its discretion, in this action. 42 U.S.C. § 1988(b).

10. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(1)–(2) because Defendants reside in the District of Oregon and all of the events or omissions giving rise to the claims occurred in this division.

## PARTIES

11. Project Veritas is a nonprofit corporation organized under section 501(c)(3) of the Internal Revenue Code. It is headquartered in Mamaroneck, New York.

12. Project Veritas Action Fund is a nonprofit corporation organized under section 501(c)(4) of the Internal Revenue Code. It is headquartered in Mamaroneck, New York.

13. Defendant Michael Schmidt is the District Attorney of Multnomah County, Oregon. District attorneys are empowered to prosecute all penalties and forfeitures to the state that may occur in their county. O.R.S. § 8.680.

14. Defendant Ellen Rosenblum is the Oregon Attorney General, whose office is located in Salem, Oregon. The Attorney General may "appear, commence, prosecute, or defend any action, suit, matter, cause or proceeding in any court when requested by any state officer, board, or commission . . . ." O.R.S. § 180.060(1)(d). The Attorney General "shall consult with, advise, and direct the district attorneys in all criminal causes and matters relating to state affairs in their respective counties." O.R.S. §180.060(8).

## STATEMENT OF FACTS

**The Operation of Oregon Recording Law**

15. Oregon law usually requires all persons who are party to a conversation to be "specifically informed" for individuals to legally obtain—that is, record—oral communications. *See* O.R.S. §§ 165.540, 165.535(1).

16. Oregon law allows individuals to record without notifying a police officer provided: (a) the officer is performing his official duties, (b) the recording is made openly and in plain view of the participants, (c) the conversation is audible by normal unaided hearing, and (d) the person recording is in a lawfully located position. O.R.S. § 165.540(5)(b).

17. Oregon law also permits individuals to record others without specifically informing them provided that the recording device is unconcealed during: (a) "public or semipublic meetings such as hearings before governmental or quasi-governmental bodies, trials, press conferences, public speeches, rallies and sporting or other events," (b) regularly "scheduled classes or similar educational activities in public or private institutions," or (c) private "meetings or conferences if all others involved knew or reasonably should have known that the recording was being made." O.R.S. § 165.540(6).

18. Oregon law almost never permits the secret audio recording of in-person conversations, though it permits secret audio recording for electronic communications so long as the recording person is a party to that conversation. *Cf.* O.R.S. § 165.540(1)(c) *with* O.R.S. § 165.540(1)(a). In rare exceptions, Oregon law allows for secret audio recording, most notably during a felony that endangers human life. O.R.S. § 165.540(5)(a).

19. Oregon law punishes anyone who may "obtain" a conversation or "use" or "divulge" a conversation that was obtained by another in violation of the law. O.R.S. § 165.540(1)(d), (e).

**Project Veritas and Project Veritas Action Fund's Newsgathering**

20. PV and PVA rely primarily on secret audiovisual recording to obtain stories of public interest about corruption, fraud, waste, and abuse. Whenever feasible, PV and PVA use secret audiovisual recording to capture the most accurate recollection of events. In certain circumstances, when equipment is unavailable or in a rushed setting, PV or PVA rely upon open audiovisual recording to capture stories. In either instance, their journalists never "specifically inform[]" individuals they are recording.

21. PV and PVA have found that announcing their recording efforts has caused individuals to refuse to talk or to change their story. *James O'Keefe Confronts Mayor of Detroit's Office Over Voter Fraud*, YOUTUBE, Aug. 3, 2016, https://www.youtube.com/watch?v=_9fHaNqRpK0 (at 2:56 – James O'Keefe to Detroit Chief Lawyer Melvin Butch Hollowell: "My cameraman is outside. Would I have your permission for him to come in and get an interview?" Hollowell: "No."; at 4:25, after threatening O'Keefe with criminal prosecution for publishing video: James O'Keefe: "Do you mind if I take some notes on this?" Hollowell: "Yeah." James O'Keefe: "Ok, great." Hollowell: "No, I said I do mind."); *James O'Keefe CONFRONTS NYT Exec Editor Dean Baquet*, YOUTUBE, Oct. 31, 2017, https://www.youtube.com/watch?v=nWpkyfoClDA (starting at 1:27, James O'Keefe confronts Dean Baquet, James O'Keefe: "You're not going to say a word to me, are you?" "Baquet: "No."); *James O'Keefe CONFRONTS Jake Tapper over #MeTooCNN video*, YouTube, Oct. 24, 2019,

6   Verified Complaint for Declaratory and Injunctive Relief

https://www.youtube.com/watch?v=PyqVoBmdVGs (James O'Keefe, at 0:43, confronts Jake Tapper about a sexual harassment allegation where Tapper states "you should call the PR department," James O'Keefe: "I did, we made 75 calls Jake").

22. PV and PVA's undercover newsgathering techniques involve recording conversations using "device[s], contrivance[s], machine[s] or apparatus[es]." *See* O.R.S. §§ 165.535(1), 165.540(1)(c).

23. PV and PVA do not engage in and have no intent to engage in eavesdropping—that is, the interception of private oral communications when a reporter is not a party to the communications. *See* O.R.S. §§ 165.543, 133.721(5), 133.721(7).

24. PV and PVA's undercover newsgathering techniques would subject them to misdemeanor prosecution under Oregon law for obtaining the whole or part of a conversation. O.R.S. § 165.540(8). This includes imprisonment for up to 364 days or a fine of up to $6,250 as a Class A misdemeanor. O.R.S. §§ 161.615, 161.635.

25. PV and PVA's newsgathering and reporting would also subject them to misdemeanor prosecution under Oregon law for divulging or using recorded communications. O.R.S. § 165.540(1)(e).

26. PV and PVA's newsgathering and reporting may also trigger accomplice liability and conspiracy charges for working with reporters or third parties to produce a story. O.R.S. §§ 161.150 (accomplice liability); 161.450 (conspiracy applies to Class A misdemeanors).

27. Because of the reach of the law, PV and PVA are chilled from exercising their First Amendment rights to engage in newsgathering and reporting in Oregon. But for the presence of O.R.S. § 165.540, PV and PVA would engage in several journalism projects in the state immediately and in years to come.

7   Verified Complaint for Declaratory and Injunctive Relief

**Project Veritas and Project Veritas Action Fund's Past and Future Investigations**

28. But for Oregon recording law, PVA would investigate allegations of corruption at the offices of the Oregon Public Records Advocate and the Public Records Advisory Council. In 2019, Oregon's Public Records Advocate resigned due to alleged pressure from or mismanagement by Governor Kate Brown. But for section 165.540, PVA would investigate this issue and secretly record interactions with the Advocate, his staff, and members of the PRA Council in: (a) open-air cafes in Portland, (b) public parks, (c) on sidewalks, and (d) in other public areas. If secret recording is not achievable, it would utilize open recording in these same circumstances. Specifically, the project would examine whether the Advocate and Council operate impartially or with pressure from the Governor. These methods of newsgathering are all illegal under section 165.540.

29. But for Oregon recording law, PV would focus its investigations in Oregon on the dramatic rise in violent protests in Portland between the police and members of Antifa and other fringe groups. Some newspaper reports suggest that Portland police have been ordered to stand down and to not engage protestors, even when they act violently or damage property. This investigation involves four distinct sets of reporting activities:

    a. PV would secretly record interactions between the police and protestors to observe and report whether usual policing functions are occurring in Portland.

    b. PV would secretly record discussions between PV journalists and the police to gather candid police perspectives on the causes of the protests and investigate issues that may not be known by the public.

    c. PV would secretly record discussions between PV journalists and protestors to gather protestors' perspectives about the causes of the protests, to learn about instances of police abuse, and to investigate any anti-police animus.

    d. In less dangerous situations or when the situation does not permit for ease of secret recording, PV would openly record discussions with protestors but without specifically informing everyone in the conversation of the recording.

30. Because protests and even ordinary public life in Portland have proven dangerous to reporters, PV fears that the safety and even lives of its journalists would be endangered if it were to record conversations openly and in plain view, or "specifically inform[]" participants that they are being recorded. Outside of organized rallies, PV would seek to do most of its secret recording on public sidewalks, public parks, or in other areas held open to the public. But all of these methods are illegal under section 165.540.

31. As investigations often turn up unknown new leads and information, PV and PVA would investigate where stories take them and openly and secretly record other government officials and ordinary citizens throughout Oregon. The details of these leads and developments cannot be known in advance. The methods of investigation, however, are all plainly illegal under section 165.540.

32. PVA has engaged in a variety of protest investigations in the past. On August 11, 2017, it had undercover journalists secretly record the happenings and protests at the infamous "Unite the Right" rally in Charlottesville, Virginia. *See* **Exhibit 1**. On August 12, 2017, a PVA journalist openly recorded another rally in Atlanta, Georgia, but retreated due to concerns about police harassment. *See id.*; **Exhibit 2**. Due to section 165.540, the parties cannot similarly investigate protests, their causes, and underlying issues in Portland.

33. PVA has engaged in a variety of investigations into political corruption by officeholders or political campaign workers. For example, in this year's presidential primaries, various campaign workers for a presidential candidate revealed controversial stances, and tied them to the candidate and his campaign. *#Expose2020 Part III: 2nd Bernie Staffer "I'll straight up get armed" "Guillotine the rich"*, YOUTUBE, Jan. 21, 2020, https://youtu.be/ImH8AjZrEcY. In 2018, in a contentious general election, various staff for a gubernatorial candidate confirmed the candidate's more controversial views and efforts to conceal them. *Gillum Staffer Says Voters "not for them to know" promises won't happen; FL "f***ed" cracker state"*, YOUTUBE, Oct. 31, 2018, https://youtu.be/di3WRRHRWlE. In the 2016 cycle, in a harbinger of PVA's current investigations, PVA secret recording captured efforts of campaign staff to cause violence at rallies of the opposing candidate. *Rigging the Election - Video I: Clinton Campaign and DNC Incite Violence at Trump Rallies*, YOUTUBE, Oct. 17, 2016, https://youtu.be/5IuJGHuIkzY. PVA has also captured campaign finance violations, and foreign interference in American elections. *Australian Labor Party Assisting Democratic US Campaigns in Violation of Campaign Finance Laws*, YOUTUBE, Feb. 25, 2016, https://youtu.be/p7kPtWAzvU4; *see also* In the Matter of Bernie 2016 and Susan Jackson in her official capacity as treasurer, Conciliation Agreement, FEC (MUR 7035), Feb. 4, 2018, https://htv-prod-media.s3.amazonaws.com/files/sanders-fec-agreement-1519771765.pdf. Similarly, PV has enaged in a variety of investigations over the years, including examinations of government officials' conduct at the Maryland Attorney General's Office as well as undercover work exposing the group J20 plotting violence at presidential innagural events. https://www.projectveritas.com/investigations/.

34. PV recently investigated Rose City Antifa and its propensity toward violence in Portland. Though filmed in 2018, PV released an Antifa video in the summer of 2020. *Antifa: "Practice things like an eye gouge, it takes very little pressure to injure someone's eyes,"* Project Veritas, June 4, 2020, https://www.projectveritas.com/news/antifa-practice-things-like-an-eye-gouge-it-takes-very-little-pressure-to/. Notably, this video investigation proved it was of public interest, garnering over 1 million views on YouTube and over 3.8 million views on Twitter. Indeed, Project Veritas's two releases, #EXPOSEANTIFA and #DefundAntifa have received roughly 10,000,000 views combined. In 2016, PV examined the Oregon public school system, its learning program, and potential manipulation for political gain. *Oregon Sec. of State Candidate Caught Using Students for Political Gain on Camera*, Project Veritas, May 16, 2016, https://www.projectveritas.com/video/oregon-secstate-candidate-using-students-for-political-gain-on-cam/. All of these were published with concern that litigation might commence against it. PV would investigate more subjects in 2020 and years to come, but not until it is legal to openly and secretly record in Oregon.

35. To date, PVA cautiously engaged in one project in Oregon: an investigation into Governor Kate Brown and allegations of campaign finance violations in 2018. *#SecretsAndLies: Oregon Governor Kate Brown, Fmr Campaign Manger Details "Graft & Corruption"*, YOUTUBE, Oct. 8, 2018, https://youtu.be/uOJCUnq1Fg8. However, all secret recording in this matter was undertaken out-of-state. PVA would record and engage in newsgathering in Oregon in 2020 and years to come, but not until it is legal to openly and secretly record.

36. PV and PVA each have a program in which they elicit information from insiders within a company or political campaign to provide newsworthy information that they may publish.

11  Verified Complaint for Declaratory and Injunctive Relief

In 2019, Project Veritas released a story obtained by an insider at CNN. This included recordings of conference calls from CNN's president, Jeff Zucker, who instructed his network that "impeachment [of President Trump] is the story" in a context more suggestive of advocating for impeachment rather than reporting on its development. *Expose CNN, Part 1: CNN Insider Blows Whistle on Network President Jeff Zucker's Personal Vendetta Against POTUS*, PV, Oct. 14, 2019, https://www.projectveritas.com/news/exposecnnpart1/.

37. Both parties would operate their insiders program in Oregon. Were they able to commence this program, PV and PVA would solicit items of newsworthy concern in Oregon and publish items of public interest they collect. But receipt of secret recordings and publication from third parties are illegal under section 165.540(1)(d) and (1)(e).

38. Undercover investigative journalism employing surreptitious recording is the primary method through which PV and PVA are able to uncover newsworthy matters concerning government fraud, abuses in the political process, and other issues of public concern. They never specifically inform subjects about recording because subjects will not share truthful, or, at least, candid information when notice is provided. Similarly, PV and PVA rarely record openly because subjects change their behavior and recollections when they detect a recording device. Because of this, PV and PVA require injunctive and declaratory relief to remedy their First Amendment rights.

## COUNT I

**Oregon Revised Statute Sections 165.540(5)(b), 165.540(6), and 165.540(1)(c) Unconstitutionally Favor Some Recording of Police but Disfavor All Other Recording**

39. Under Oregon law, an individual may openly record the police in particular circumstances. However, that same person may not openly record the conversations of city council

members, school board members, or any other government actors without specifically notifying them. O.R.S. § 165.540(5)(b).

40. Oregon law offers police officers robust authority to secretly record the public, such as during the use of a taser or "Electro-Muscular Disruption Technology" device, while denying the public the same right to secretly record the exact same circumstances. O.R.S. § 165.540(5)(d)(B), (5)(e).

41. O.R.S. § 165.540(6) operates as a grant of government permission to openly record certain public events without requiring subjects be "specifically informed." In similar other public settings not favored by government, subjects must be "specifically informed" about recording.

42. Because audiovisual recording is protected by the First Amendment, government actions that favor the recording of particular subjects and events while disfavoring others invokes content and viewpoint discrimination and the suppression of protected newsgathering. *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 642–43 (1994). Differential treatment of recording for different actors can act as "effectively as a censor to check critical comment." *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575, 585 (1983). Here, Oregon law singles out a specific subject matter that may be openly recorded—police on the beat—and forbids similar recording of other government agents engaging in official acts or ordinary citizens without notice, making this differential treatment unconstitutional. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 156–57 (2015); *see also Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335, 2347 (2020). The law also opens up government-favored events, like press conferences, and allows for open recording, but does not recognize a similar right in other public areas

where more critical newsgathering is likely to occur, such as on a crowded sidewalk or light rail.

43. Oregon law enacts an impermissible divide by allowing the open recording of the police without specifically informing them but forbidding any recording of other government actors without notification. It grants journalists a similar right to record staged events preferred by the government without notice, but forbids it in other public places. The law cannot be said to advance an interest in privacy since it selectively bans unnotified recording at other public places disfavored by the government. Because of this, sections 165.540(5)(b), 165.540(6), and 165.540(1)(c) are unconstitutional on their face and as applied to Plaintiffs, necessitating injunctive and declaratory relief.

## COUNT II

**Oregon Revised Statute Section 165.540(1)(c) Violates the First Amendment by Prohibiting Secret Audio Recording Almost All of the Time**

44. Section 165.540(1)(c) acts as general rule forbidding the secret audio recording of any conversation unless all parties to it are specifically informed. This violates the First Amendment by denying journalists and others not before this Court the ability to record news or information and distribute it for public consumption. *See Wasden*, 878 F.3d at 1203–05 (requirement to obtain consent before recording violated the First Amendment); *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061–62 (9th Cir. 2010); *Martin v. Gross*, 340 F.Supp.3d 87, 109 (D. Mass. 2018) (ban on secret audio recording violates the First Amendment).

45. The constitutional damage done by section 165.540(1)(c) is only magnified by the exemptions and maze of government manipulation of information previously described in this complaint. The net effect of Oregon law is to manipulate the marketplace of ideas,

allowing police to secretly record people being tasered, but making it illegal for people to secretly record the police tasering them—or, no less importantly, harassing them, harassing others, ignoring their duties, or other malfeasance.

46. While Oregon law offers very limited opportunities to openly record, the law is suspiciously under and over inclusive. It is under inclusive because it allows the nonconsensual recording of one set of subjects: the police, while denying a similar right to record other government actors. It is overinclusive because it maintains a nearly all-out ban for nearly all forms of secret recording, even in situations that are entirely open to the public, or without an expectation of privacy. *See* O.R.S. § 165.540(3) (permitting secret recording in one's own home). This damages First Amendment rights to engage in news and information gathering in public places using a technology that is effective and keeps reporters safe.

47. By denying the right to record secretly in nearly blanket fashion, Oregon bans the most effective means of gathering the news. This goes too far because the law attempts to prohibit recording conversations that are not private—those voluntarily disclosed to the world at large. Oregon law also puts citizen journalists in physical jeopardy given the proclivity of both police officers and protestors to engage in violence during heated times. PV and PVA require the ability to record secretly such that their journalists will not be placed in harm's way.

48. Section § 165.540(1)(c) is unconstitutional on its face and as applied to Plaintiffs by forbidding recording and reporting about important items of public interest in Oregon. This necessitates injunctive and declaratory relief.

**COUNT III**

**Oregon Revised Statute 165.540(1)(d) and (e) Violate the First Amendment by Impermissibly Punishing Publishers of Information**

1. State action to punish the publication of truthful information "seldom can satisfy constitutional standards." *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 102 (1979). Government is without authority to punish journalists who obtain, then publish, truthful information concerning a matter of public significance. *Id.* at 103.

2. Where journalists play "no part in the illegal interception," the First Amendment forecloses government from punishing publication of intercepted material. *Bartnicki v. Vopper*, 532 U.S. 514, 525–26 (2001).

3. Because section 165.540(1)(d) and (1)(e) allow the Defendants to punish journalists for publishing truthful information obtained from others where the journalists played no part in the interception of that information, these provisions are invalid on their face and as applied to Plaintiff. PV and PVA require injunctive and declaratory relief so that they may run their insiders program in Oregon and publish items of newsworthy impact for the public.

**PRAYER FOR RELIEF**

Wherefore, PV and PVA pray for the following relief:

1. A declaratory judgment that Oregon Revised Statutes section 165.540 is unconstitutional on its face or that Oregon Revised Statutes sections 165.540(1)(c), (d), (e) are unconstitutional as applied to PV and PVA.

2. Preliminary and permanent injunctive relief pursuant to 42 United States Code section 1983 against enforcement of Oregon Revised Statutes section 165.540 against activity that constitutes the secret audio recording of conversations and the obtaining, use, or divulging of communications obtained from others by publishers who played no part in their interception.

3.  Plaintiffs' reasonable costs and attorneys' fees pursuant to the Civil Rights Act or any applicable statute or authority, and further relief this Court may grant in its discretion. 42 U.S.C. § 1988.

4.  Any other relief that the Court deems just and appropriate.

Respectfully submitted,

PROJECT VERITAS & PROJECT VERITAS ACTION FUND,

By its attorneys,

/s/ Eric Winters
Eric Winters, OSB 983790
eric@ericwinters.com
Eric C. Winters, Attorney
30710 SW Magnolia Ave
Wilsonville OR  97070
(503) 754-9096

Benjamin Barr*
ben@barrklein.com
BARR & KLEIN PLLC
444 N. Michigan Avenue Ste. 1200
Chicago, Illinois 60611
(202) 595-4671

Stephen R. Klein*
steve@barrklein.com
BARR & KLEIN PLLC
1629 K St NW Ste. 300
Washington, DC 20006
(202) 804-6676

*admission pro hac vice pending

August 24, 2020

## PROJECT VERITAS AND PROJECT VERITAS ACTION FUND VERIFICATIONS

I, James O'Keefe III, declare as follows:

1. I am President of Project Veritas and Project Veritas Action Fund.

2. Project Veritas and Project Veritas Action Fund are headquartered in Mamaroneck, New York. Their mailing address is 1214 West Boston Post Road #148, and #156, respectively, Mamaroneck, NY 10543.

3. I have personal knowledge of Project Veritas and Project Veritas Action Fund's activities, including those set out in this Verified Complaint, and if called upon to testify I would competently testify as to the matters stated herein.

4. I verify under penalty of perjury under the laws of the United States of America that the factual statements contained in this Verified Complaint concerning my existing and proposed activities are true and correct.

Executed on August 21st, 2020.

_____
James O'Keefe III