ELLEN F. ROSENBLUM
Attorney General
BRIAN SIMMONDS MARSHALL  #196129
CARLA A. SCOTT #054725
Senior Assistant Attorneys General
SHAUNEE MORGAN #194256
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Brian.S.Marshall@doj.state.or.us
         Carla.A.Scott@doj.state.or.us
         Shaunee.Morgan@doj.state.or.us


Attorneys for Defendants




IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| PROJECT VERITAS, PROJECT VERITAS ACTION FUND, | Case No.  3:20-CV-01435-JR |
| Plaintiffs, | MOTION TO DISMISS |
| v. | |
| MICHAEL SCHMIDT, in his official capacity as Multnomah County District Attorney, ELLEN ROSENBLUM, in her official capacity as Oregon Attorney General, | |
| Defendants. | |


Page i -   MOTION TO DISMISS
BM2/db5/#10477594-v1

# TABLE OF CONTENTS

LR 7-1(A) CERTIFICATION ......................................................................................... 1

MOTION ........................................................................................................................... 1

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 2

LEGAL STANDARDS .................................................................................................... 4

I.      12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ...................... 4

II.     12(B)(1) MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
        JURISDICTION ........................................................................................................ 4

III.    FIRST AMENDMENT STANDARDS ........................................................................... 5

ARGUMENT .................................................................................................................... 6

I.      VERITAS'S COMPLAINT FAILS TO STATE A CLAIM. ............................................ 6

        A.      Count II's Challenge to Restrictions on Secret Recording Fails Because
                Section 165.540(1)(c) Comports with the First Amendment ................................. 6

                1.      The prohibition is narrowly tailored to protect the significant state
                        interest to protect individuals from being secretly recorded ....................... 6

                2.      The life-threatening felony exception is content-neutral and
                        constitutionally permissible. ...................................................................... 11

        B.      Count I's Challenge to the Scope of the Open Recording Exceptions
                Should be Dismissed. ......................................................................................... 11

        C.      Count III's Challenge to the Distribution Provision Should Be Dismissed. .......... 15

                1.      ORS § 165.540(1)(e)'s bar on distribution of illegal recordings is
                        not substantially overbroad in comparison to its legitimate sweep. ......... 15

                2.      Veritas lacks standing to assert Count III on an as-applied basis. ............ 19

II.     VERITAS'S PLANS ARE TOO INDEFINITE TO SUPPORT ITS AS-APPLIED
        CHALLENGES. ....................................................................................................... 20

CONCLUSION ............................................................................................................... 22

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# TABLE OF AUTHORITIES

**Cases**

*Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) ................................... 7

*Animal Legal Defense Fund v. Wasden,* 878 F. 3d 1184 (9th Cir. 2018) .............................. 12, 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 4

\* *Bartnicki v. Vopper,* 532 U.S. 514 (2001) ........... 1, 2, 7, 8, 11, 12, 13, 15, 16, 17, 18, 19, 20, 21

*Bishop Paiute Tribe v. Inyo Cty*, 863 F.3d 1144 (9th Cir. 2017)................................................. 20

*Boehner v. McDermott*, 484 F.3d 573 (D.C. Cir. 2007) ............................................................. 18

*Branzburg v. Hayes*, 408 U.S. 665 (1972).................................................................................. 10

*Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991)..................................................................... 10

*Democratic National Committee v. Russian Federation*, 392 F. Supp. 3d 410 (S.D.N.Y. 2019).................................................................................................................................. 17

\* *Dieteman v. Time Inc.*, 449 F.2d 245 (9th Cir. 1971)........................................................ 7, 8, 18

*Downs v. Los Angeles Unified Sch. Dist.*, 228 F.3d 1003 (9th Cir. 2000)................................... 14

*Dreier v. United States*, 106 F.3d 844 (9th Cir. 1996).................................................................. 5

*Hoye v. City of Oakland*, 653 F.3d 835 (9th Cir. 2011)............................................................... 21

*Jean v. Massachusetts State Police*, 492 F.3d 24 (1st Cir. 2007) ................................................ 17

*Kennedy v. Bremerton Sch. Dist.*, 869 F.3d 813 (9th Cir. 2017).................................................. 14

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ............................................................ 4, 20

*Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144 (9th Cir. 2017)........................................ 4

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528 (9th Cir. 2019)....................................................................................................................................... 4

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829  (9th Cir. 2012) .......... 20

\* *Project Veritas Action Fund v. Conley*, 244 F. Supp. 3d 256 (D. Mass. 2017).......................... 9

*Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015)......................................................... 6, 11, 13

*State v. Bichsel*, 101 Or. App. 257 (1990) .................................................................................... 3

\* indicates an authority upon which Defendants principally rely

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*State v. Eastep*, 361 Or. 746 (2017) ............................................................................. 3

*State v. Knobel*, 97 Or. App. 559 (1989) ..................................................................... 6

\* *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622 (1994) ...................................... 5, 10

*United States v. Davis*, 825 F.3d 1014 (9th Cir. 2016) ................................................ 16

\* *United States v. Williams,* 553 U.S. 285 (2008) ....................................................... 19

\* *Virginia v. Hicks*, 539 U.S. 113 (2003) ................................................... 6, 10, 16, 19

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015) ........................ 14

\* *Ward v. Rock Against Racism*, 491 U.S. 781 (1989) .................................... 5, 10, 13

**Statutes**

Or. Rev. Stat. § 161.095(2) ........................................................................................ 16

Or. Rev. Stat. § 165.540 ......................................................................... 1, 2, 12, 14, 15

Or. Rev. Stat. § 165.540(1)(c) ........................................................................ 1, 2, 6, 12

Or. Rev. Stat. § 165.540(1)(e) ............................................................. 3, 15, 16, 17, 20

Or. Rev. Stat. § 165.540(5)(a) ................................................................................... 11

Or. Rev. Stat. § 165.540(5)(b) ................................................................................... 11

Or. Rev. Stat. § 165.540(5)(b)(A) .............................................................................. 14

Or. Rev. Stat. § 165.540(5)(b)(B) ................................................................................ 3

Or. Rev. Stat. § 165.540(6) ................................................................................... 3, 12

Or. Rev. Stat. § 165.540(6)(a) ..................................................................................... 3

Or. Rev. Stat. § 165.540(6)(b) ..................................................................................... 3

Or. Rev. Stat. § 165.540(6)(c) ..................................................................................... 3

Or. Rev. Stat. § 165.540(e) ........................................................................... 1, 15, 16

\* indicates an authority upon which Defendants principally rely

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**Regulations**

Fed. R. Civ. P. 12(b)(1)..............................................................................1, 4

Fed. R. Civ. P. 12(b)(6)..............................................................................1, 4

**United States Code**

18 U.S.C. § 2511(1)(d) ................................................................................16

\* indicates an authority upon which Defendants principally rely

Page v -   MOTION TO DISMISS
BM2/db5/#10477594-v1

## LR 7-1(A) CERTIFICATION

Counsel for Defendants certify that they conferred with Plaintiffs' counsel regarding the issues raised by this motion, but the parties were unable to resolve the issues.

## MOTION

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Attorney General Ellen Rosenblum and Multnomah County District Attorney Michael Schmidt move for an order dismissing the claims against them because the Complaint fails to state a claim, Plaintiffs lack standing to assert its as-applied challenge in Count III of the Complaint and the Court thus lacks subject-matter jurisdiction over it, and Plaintiffs' as-applied claims are not prudentially ripe. This motion is supported by the following Memorandum of Law and the papers on file in this case.

## INTRODUCTION

Oregon's Secret Recording Law, ORS § 165.540, protects individuals' legitimate interest in not being recorded without their knowledge and the reasonable expectation that one's conversations are not typically secretly recorded with a hidden device. But the Secret Recording Law always *allows* recording so long as the other parties to the conversation are "specifically informed." ORS § 165.540(1)(c). By allowing recording whenever such a warning is given, Oregon law respects the First Amendment rights of journalists and others to gather and use audio in their expressive activities. The U.S. Constitution allows Oregon to enforce such a balanced, content-neutral law. The Secret Recording Law serves an important state interest in protecting individuals from becoming unwitting and unwilling participants in another's expressive activities, while allowing recording when fair warning is provided. For that reason, Plaintiffs' challenge to the law fails. *See* Argument §§ I.A–I.B, below.

The Secret Recording Law also protects Oregonians against the distribution of illegal recordings. ORS § 165.540(e). In *Bartnicki v. Vopper*, the Supreme Court held that a similar federal law was unconstitutional *as-applied* when: (i) the broadcaster had no involvement in the

Page 1 -   MOTION TO DISMISS
BM2/db5/#10477594-v1

creation of the illegal recording; (ii) the recording was of a matter of public concern; and (iii) the individuals recorded had no legitimate privacy interest. 532 U.S. 514 (2001). Veritas's facial challenge to the distribution provision fails, because, like the federal statute at issue in *Bartnicki*, most applications of the distribution provision remain lawful despite the availability of as-applied challenges to the law. *See* Argument § I.C.1, below. But Veritas lacks standing to pursue an as-applied challenge under *Bartnicki* because it has no illegal recordings to distribute other than those it made itself. *See* Argument § I.C.2, below.

Veritas's as-applied challenges are also too indefinite to be fit for judicial review and are therefore barred under the prudential ripeness doctrine. To adjudicate an *as-applied* challenge, the Court must know *what* activity it is applying the statute to. The Complaint's incomplete hypotheticals about the recordings Veritas hopes to make are too indefinite to support an as-applied challenge. *See* Argument § II, below.

## FACTUAL BACKGROUND

Project Veritas and Project Veritas Action Fund (collectively, "Veritas") claim that ORS § 165.540 ("Secret Recording Law") violates the First Amendment on its face or as applied[1] to Veritas's activities. The Secret Recording Law requires that before someone records a "conversation[]," the conversation's other participant(s) must be warned.[2]

The specificity of the warning required depends on the context of the recording. Recording is always permitted when "all participants in the conversation are specifically informed that their conversation is being obtained."[3] But for "public or semi-public meetings"

---

[1] Project Veritas's challenges are limited to ORS § 165.540(1)(c), (d), and (e).

[2] ORS § 165.540(1)(c).

[3] *Id.*

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

(including "rallies … and other events")[4] or "classes,"[5] no warning is required to record with an "unconcealed recording device."[6] Similarly, an on-duty law enforcement officer's conversation may generally be recorded when "[t]he recording is made openly and in plain view of the participants in the conversation."[7] For "[p]rivate meetings or conferences," recording with an "unconcealed recording device" is allowed "if all others involved knew or reasonably should have known that the recording was being made."[8] "Meetings" is undefined in the statute, but given its ordinary meaning,[9] it would encompass a meeting of just two people.[10] However, "mere encounters are not 'meetings'…."[11] The use, attempted use, or distribution of recorded conversations obtained in violation of the Secret Recording Law is also prohibited.[12]

Veritas engages "almost exclusively in undercover investigative journalism."[13] It rarely uses open recording, typically only "when equipment is unavailable or in a rushed setting."[14] Veritas alleges that, but for the Secret Recording Law, it would investigate recent violence in

---

[4] ORS § 165.540(6)(a) ("[P]ublic or semipublic meetings such as hearings before governmental or quasi-governmental bodies, trials, press conferences, public speeches, rallies and sporting or other events").

[5] ORS § 165.540(6)(b) ("Regularly scheduled classes or similar educational activities in public or private institutions.").

[6] ORS § 165.540(6).

[7] ORS § 165.540(5)(b)(B).

[8] ORS § 165.540(6)(c).

[9] *See State v. Eastep*, 361 Or. 746, 751 (2017) ("When statutes do not define their terms, we assume that the legislature intended them to have their plain, ordinary meanings.").

[10] *See* Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/meeting[10] (defining "meeting" as "an act or process of coming together," with the examples "[l]et's have a meeting to discuss these problems" and "[t]hey started dating each other soon after their first meeting.").

[11] *State v. Bichsel*, 101 Or. App. 257, 261 n.3 (1990).

[12] ORS § 165.540(1)(e).

[13] Compl. ¶ 1.

[14] *Id*. ¶ 20.

Page 3 -   MOTION TO DISMISS
BM2/db5/#10477594-v1

Portland between antifa groups and police forces[15] and the 2019 resignation of the Oregon Public Records Advocate.[16] Veritas claims it plans to "openly and secretly record other government officials and ordinary citizens throughout Oregon" but alleges that "[t]he details of [the investigations] cannot be known in advance."[17]

## LEGAL STANDARDS

### I.    12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### II.    12(B)(1) MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

"[L]ack of *Article III* standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "To establish Article III standing, a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016)). "Conclusory allegations and unreasonable inferences . . . are insufficient to defeat a motion to dismiss" pursuant to Rule 12(b)(1). *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) (internal citation omitted). A court may consider evidence outside the pleadings to resolve factual disputes

---

[15] *Id.* ¶ 29.

[16] *Id.* ¶ 28.

[17] *Id.* ¶ 31.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

related to the court's subject-matter jurisdiction. *See NEI Contracting & Eng'g, Inc.*, 926 F.3d at

532; *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) ("[U]nlike a Rule 12(b)(6)

motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional

allegations despite their formal sufficiency[.]") (internal quotation omitted). A plaintiff bears the

burden of proving subject matter jurisdiction and must "'clearly . . . allege facts demonstrating'

each element." *Spokeo, Inc.*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518

(1975)).

### III.    FIRST AMENDMENT STANDARDS

Under the First Amendment, "the government may impose reasonable restrictions on the

time, place, or manner of protected speech, provided the restrictions 'are justified without

reference to the content of the regulated speech, that they are narrowly tailored to serve a

significant governmental interest, and that they leave open ample alternative channels for

communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)

(upholding restriction because the "government 'ha[s] a substantial interest in protecting its

citizens from unwelcome noise.'" (citations omitted)). "A regulation that serves purposes

unrelated to the content of expression is deemed neutral, even if it has an incidental effect on

some speakers or messages but not others." *Id.*

To be narrowly tailored, "a regulation need not be the least speech-restrictive means of

advancing the Government's interests." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 662

(1994). Rather, a law is narrowly tailored so long as the "'regulation promotes a substantial

government interest that would be achieved less effectively absent the regulation.'" *Id.* (quoting

*Ward*, 491 U.S. at 799). "Narrow tailoring in this context requires, in other words, that the means

chosen do not 'burden substantially more speech than is necessary to further the government's

legitimate interests.'" *Id.* (quoting *Ward*, 491 U.S. at 799).

In an overbreadth challenge under the First Amendment, a "showing that a law punishes

a 'substantial' amount of protected free speech, 'in relation to the statute's plainly legitimate

sweep,' suffices to invalidate all enforcement of that law 'until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression ….'" *Virginia v. Hicks*, 539 U.S. 113, 119–20 (2003) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)) (upholding housing authority's trespass policy despite potentially barring demonstrators and leafleters). However, an overbreadth challenge requires "a law's application to protected speech be 'substantial,' not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications before applying the 'strong medicine' of overbreadth invalidation." *Id.* "The overbreadth claimant bears the burden of demonstrating, from the text of the law and from actual fact, that substantial overbreadth exists." *Id.* at 122. (internal quotation marks omitted).

## ARGUMENT

## I.   VERITAS'S COMPLAINT FAILS TO STATE A CLAIM.

### A.    Count II's Challenge to Restrictions on Secret Recording Fails Because Section 165.540(1)(c) Comports with the First Amendment.

#### 1.    The prohibition is narrowly tailored to protect the significant state interest to protect individuals from being secretly recorded.

ORS § 165.540(1)(c) prohibits recording conversations "if not all participants in the conversation are specifically informed that their conversation is being obtained." This general prohibition is content-neutral. "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). As discussed below, the exceptions to the general prohibition are content-neutral as well. Accordingly, the Secret Recording Law is constitutional if it is narrowly tailored to serve a significant governmental interest and leaves open ample alternative channels to communicate. Applying this test, Oregon courts have squarely rejected the argument that the Secret Recording Law violates the First Amendment. *See State v. Knobel*, 97 Or. App. 559, 564 (1989) (rejecting First Amendment challenge to ORS § 165.540(1)(c)).

Page 6 -   MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

The Secret Recording Law serves the State's important interest in protecting Oregonians' right not to be recorded without their knowledge. It protects not only conversations in the places the Complaint alleges Veritas would record—election offices, sidewalks, and hotel lobbies[18]— but also parks, public streets, hotel rooms, government offices, other workplaces, and political, religious, and civic meetings. The Secret Recording Law protects important privacy interests in each of these settings.

For example, strangers are welcomed to many gatherings—such as twelve-step groups, religious services, and political campaign activities—on the assumption that they come in good faith, not to make recordings to publicly embarrass other participants. Prohibiting secret recordings facilitates trust by such organizations and limits the damage that a bad-faith newcomer could do by distributing a surreptitious recording to a worldwide audience. An organization "should not be required to take the risk that what is heard and seen will be transmitted by photograph or recording, or in our modern world, in full living color and hi-fi to the public at large or to any segment of it that the visitor may select." *Dieteman v. Time Inc.*, 449 F.2d 245, 249 (9th Cir. 1971) (upholding invasion of privacy claim for undercover secret recording over First Amendment defense); *accord Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 607 n.13 (7th Cir. 2012) ("The distinction between open and concealed recording, however, may make a difference in the intermediate-scrutiny calculus because surreptitious recording brings stronger privacy interests into play.").

The Secret Recording Law also facilitates one-on-one communications. This too is a legitimate government interest. *See Bartnicki* , 532 U.S. at  533 ("[T]he fear of public disclosure of private conversations might well have a chilling effect on private speech."). Even public officials may be more candid when assured that they are speaking to the constituents before

---

[18] Compl. ¶ 5.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

them, rather than be on-guard in case they are being set up for an embarrassing audio recording where their words could be selectively edited and distributed worldwide.

As the Complaint alleges, people change their conduct when they know they are being recorded.[19] The government has a legitimate interest in ensuring that those who are being recorded are alerted that their words might be recorded and then viewed "over ten million" times.[20] Recognizing a constitutional right to secretly record "could have a most pernicious effect upon the dignity of man and [] would surely lead to guarded conversations and conduct where candor is most valued …." *Dieteman*, 449 F.2d at 249.

Fundamentally, "the Constitution permits legislatures to respond flexibly to the challenges future technology may pose to the individual's interest in basic personal privacy." *Bartnicki*, 532 U.S. at 541 (Breyer, J., concurring). "Clandestine and pervasive invasions of privacy, unlike the simple theft of documents from a bedroom, are genuine possibilities as a result of continuously advancing technologies." *Id.* As recording equipment becomes more advanced and less costly, the need only grows for legal protections for the "freedom *not* to speak publicly, one which serves the same ultimate end as freedom of speech in its affirmative aspect." *Id.* at 532 n.20 (majority op.) (citations and quotations omitted).

The First Amendment does not give Veritas the right to deceive others into unwittingly saying something it wishes to record. The First Amendment does not require others to give Veritas information it desires. Nor does the First Amendment require the State to facilitate Veritas's deception of its targets. The First Amendment requires only that Veritas be permitted to communicate whatever information obtained lawfully. Any burden the Secret Recording Law imposes on Veritas stems solely from the statute's protection of individuals' reasonable

---

[19] Compl. ¶ 21.

[20] *See id.* ¶ 3.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

expectation that they are not unknowingly participating in the creation of a recording that could be used for another's expressive activity. That protection is consistent with the Constitution.

Veritas claims that the Secret Recording Law "den[ies] … a … right to record … government actors."[21] No authority provides that the First Amendment invariably protects the recording of public officials, regardless of context. The Supreme Court, prior to COVID-19, famously did not contemporaneously release recordings of its public sessions. Given that practice, the Supreme Court has implicitly rejected Veritas's claim that the First Amendment requires that all public officials must be subject to recording anytime they are in public. Regardless, the Secret Recording Law does not even go that far: it does not ban recording, only recording without fair warning.

Veritas also argues that it has a First Amendment right to secretly record private individuals, such as the antifa organizations it seeks to investigate. *See* Compl. ¶ 31 ("[Veritas] would … openly and secretly record … ordinary citizens throughout Oregon."). But as another court rejecting the First Amendment claim Veritas presented there opined:

> Individuals have conversations they intend to be private, in public spaces, where they may be overheard, all the time—they meet at restaurants and coffee shops, talk with co-workers on the walk to lunch, gossip with friends on the subway, and talk too loudly at holiday parties or in restaurant booths. These types of conversations are ones where one might expect to be overheard, but not recorded and broadcast. There is a significant privacy difference between overhearing a conversation in an area with no reasonable expectation of privacy and recording and replaying that conversation for all to hear.

*Project Veritas Action Fund v. Conley*, 244 F. Supp. 3d 256, 264 (D. Mass. 2017). Although in that case Veritas challenged a statute that banned eavesdropping in addition to other secret recording, the court rejected Veritas's claim with respect to private individuals in its entirety.

Veritas's claim to a journalistic purpose does not change this Court's analysis because "generally applicable laws do not offend the First Amendment simply because their enforcement

---

[21] *Id.* ¶ 46.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

against the press has incidental effects on its ability to gather and report the news." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991); *see also Branzburg v. Hayes*, 408 U.S. 665, 684 (1972) (noting the First Amendment does not "guarantee the press a constitutional right of special access to information not available to the public generally.")

The Secret Recording Law does not "burden substantially more speech than is necessary to further"[22] the legitimate State interest in protecting individuals from being recorded without their knowledge. With an express warning, recording is always permitted. And, as detailed below (§ I.B), open recording without an express warning is allowed in settings where a person would most expect to be recorded. These exceptions thereby permit recording when a specific warning is unnecessary to prevent unfair surprise.

For similar reasons, the Secret Recording Law also "leave[s] open ample alternative channels for communication of the information.'" *Ward*, 491 U.S. at 791. First, it leaves open any means of communication that does not involve recording. Second, it always allows recording when other participants in the conversation are expressly notified; that is, a statement as simple as "I'm recording" renders the recording legal. And, in certain public and semi-public settings, open recording is permitted without a specific warning.

In contrast to this "plainly legitimate sweep" of the Secret Recording Law, Veritas can cite no authority for the proposition that a content-neutral law regulating secret recording violates the First Amendment. Even if Veritas identifies a handful of hypotheticals where the First Amendment bars states from prohibiting secret recording, that is not sufficient for its facial challenge to succeed. *See Hicks*, 539 U.S. at 119–20. Rather, Plaintiffs' overbreadth challenge requires the Secret Recording Law's unconstitutional applications to protected speech be substantial relative to the law's constitutional applications. *See* pp. 6, above, & 19, below.

---

[22] *Turner Broad. Sys., Inc.*, 512 U.S. at 662.

Page 10 - MOTION TO DISMISS
BM2/db5/#10477594-v1

**2.    The life-threatening felony exception is content-neutral and constitutionally permissible.**

The Secret Recording Law does not apply to "record[ing] a conversation during a felony that endangers human life." ORS § 165.540(5)(a). This exception does not render the Secret Recording Law unconstitutional for two reasons.

First, the exception is content-neutral. Recording a conversation during the commission of a life-threatening felony is lawful regardless of the "the topic discussed or the idea or message expressed," *Reed*, 576 U.S. at 163. Whether it relates to the crime committed or is extraneous to it, the recording remains lawful. Because this exception does not create a "distinction[] drawn based on the message a speaker conveys," *id.* at 163–64, the Secret Recording Law is subject only to intermediate scrutiny. As argued above, the law is narrowly tailored to important government interests, and is therefore constitutional.

Second, this exception would withstand any level of scrutiny. Allowing recording during a felony would facilitate gathering evidence to allow the prosecution of a serious crime, an important state interest. Moreover, when a serious crime is being committed, there is no legitimate expectation of privacy at stake. *Cf. Bartnicki*, 532 U.S. at 539 (Breyer, J., concurring) (collecting authorities). And anyone witnessing such a crime would be on-notice that there was no reasonable expectation that their words would not be publicly disclosed, including in a criminal trial.

**B.    Count I's Challenge to the Scope of the Open Recording Exceptions Should be Dismissed.**

Veritas alleges that two exceptions to the Secret Recording Law's general requirement that individuals provide notice to other participants before recording a conversation, ORS § 165.540(5)(b) and (6) ("open recording provisions"), are not content-neutral. *See* Compl. ¶¶ 39–43. ORS § 165.540(5)(b) allows recording of a conversation with an on-duty law enforcement officer if, most relevantly, "[t]he recording is made openly and in plain view of the participants in the conversation." ORS § 165.540(6) applies to recordings, made with an

Page 11 - MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

"unconcealed recording device," of "public or semi-public meetings" and "classes" as well as "private meetings ... if all others involved knew or reasonably should have known that the recording was being made." The scope of the open recording provisions are content-neutral and are tailored to Oregonians' legitimate expectation of when and under what circumstances they will be recorded. These provisions therefore do not run afoul of the First Amendment.

The open recording exceptions to the Secret Recording Law do not impermissibly favor certain content. These exceptions "do[] not distinguish based on the content of the intercepted conversations, nor is it justified by reference to the content of those conversations." *Bartnicki*, 532 U.S. at 526. In *Animal Legal Defense Fund v. Wasden*, the Ninth Circuit held that the so-called Ag-Gag statute in that case was a content-based restriction because it "prohibit[ed] the recording of a defined topic." 878 F.3d 1184, 1204 (9th Cir. 2018). The law there restricted "making audio or video recordings of the 'conduct of an agricultural production facility's operations.'" *Id.* at 1203 (quoting Idaho Code § 18–7042(1)(d)). But ORS § 165.540 does not single-out recordings of a single activity, such as agricultural production, for different treatment. Rather, the two exceptions to the specific-warning requirement turn on: (i) the forum of the speech, that is, its time and place; and (ii) whether a law enforcement officer participates in the conversation. Neither exception is content-based.

The exception to allow "public and semi-public meetings" to be recorded with an "unconcealed recording device," ORS § 165.540(6), without requiring "all participants in the conversation [be] specifically informed that their conversation is being obtained," ORS § 165.540(1)(c), is a reasonable, content-neutral regulation. Regardless of what is discussed, it is only the time, place, and manner of the recording that controls whether the exception is available. The law "does not distinguish based on the content of the intercepted conversations," *Bartnicki*, 532 U.S. at 526. Therefore, the open recording provisions must only be "narrowly tailored to serve a significant governmental interest," *Ward*, 491 U.S. at 791.

Page 12 - MOTION TO DISMISS

The provisions easily meet that test. In "[p]ublic or semipublic meetings" or "classes," there is a lesser expectation of privacy, and it would be more burdensome for someone who wished to record to "specifically inform[]" every other participant in the conversation than in a small, informal conversation. Similarly, allowing recordings of "[p]rivate meetings" when the other participants "knew or reasonably should have known" recording was occurring is a reasonable middle ground between the most permissive standard for public meetings (no warning necessary) and other conversations ("specifically inform[ing]" other participants is required). Moreover, as a practical matter, these tests for open recording are substantially similar. Typically, the presence of "an unconcealed recording device" is enough for others in a conversation to "reasonably[ ] have known" they were recorded.

The allowance for open recording without "specifically inform[ing]" law enforcement is also content-neutral. The exception does not turn on "the topic discussed or the idea or message expressed," *Reed*, 576 U.S. at 163. Instead, it turns solely on whether a law enforcement officer participates in the conversation and other elements[23] unrelated to the *content* of the conversation. In *Animal Legal Defense Fund*, the Ninth Circuit held the Idaho statute was content-based because it allowed a person to "record an after-hours birthday party among co-workers, a farmer's antique car collection, or a historic maple tree but not the animal abuse, feedlot operation, or slaughterhouse conditions." 878 F.3d at 1204. Consequently, "only by viewing the recording can the Idaho authorities make a determination about criminal liability." *Id.* But under

---

[23] The exception encompasses:

> A person who records a conversation in which a law enforcement officer is a participant, if:
> (A) The recording is made while the officer is performing official duties;
> (B) The recording is made openly and in plain view of the participants in the conversation;
> (C) The conversation being recorded is audible to the person by normal unaided hearing; and
> (D) The person is in a place where the person lawfully may be … .

ORS § 165.540(5)(b).

Page 13 - MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Oregon's Secret Recording Law, the rule is the same regardless of whether the law enforcement officer is making idle conversation or making an arrest: open recording is allowed. This exception serves a significant government interest given the unique role of law enforcement officers. Unlike many government officials, law enforcement officers routinely engage with the general public in public areas, often record their interactions with citizens themselves and, because they are armed, make split-second decisions that carry life-and-death consequences. Allowing recording under those circumstances serves the important interest in public safety.

In addition, the law enforcement exception constitutes, in effect, a statutory consent to recording without being "specifically informed," thereby waiving the government's interest in *not* being recorded in some circumstances. Plaintiffs suggest that this is content- or even viewpoint-based regulation. *See* Compl. ¶ 42. "Viewpoint neutrality, however, does not apply … because it is a case of the government itself speaking …" *Downs v. Los Angeles Unified Sch. Dist.*, 228 F.3d 1003, 1011 (9th Cir. 2000). "[W]hen public employees make statements *pursuant to their official duties*, the employees are not speaking as citizens for First Amendment purposes …." *Kennedy v. Bremerton Sch. Dist.*, 869 F.3d 813, 823 (9th Cir. 2017) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)) (holding football coach's on-field prayer after game was government speech). "When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) (holding license plate messages are not subject to free speech challenge).

Thus, allowing open recording of conversations involving a "law enforcement officer" that is "made while the officer is performing official duties," ORS § 165.540(5)(b)(A), while not making a similar waiver of rights under ORS § 165.540 for other government employees, is not a content-based discrimination. Rather, it exercises the government's prerogative to forgo asserting its interest in not being recorded without specific warning under specific circumstances.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

The Secret Recording Law's exceptions to allow recording without "specifically informing" others permit recording in circumstances where there is no unfair surprise through secret recordings. Consequently, these exceptions are well-tailored to the State's interest in protecting Oregonians from being recorded without their knowledge.

### C.    Count III's Challenge to the Distribution Provision Should Be Dismissed.

ORS § 165.540(e) makes it unlawful to "[u]se or attempt to use, or divulge to others, any conversation … obtained by any means prohibited by" ORS § 165.540.  Count III of Veritas's Complaint argues that this provision is unconstitutional "on [its] face and as applied to" Veritas under *Bartnicki*. *See* Complaint at p. 16 (Count III, ¶¶ 2–3).

#### 1.    ORS § 165.540(1)(e)'s bar on distribution of illegal recordings is not substantially overbroad in comparison to its legitimate sweep.

Veritas's facial challenge relies on *Bartnicki*, but that case did not concern a facial challenge. Rather, *Bartnicki* considered "the validity of the statutes as applied to the specific facts" presented there, 532 U.S. at 524—whether the First Amendment protected broadcast of an illegally recorded wiretap evincing threats of violence in a labor dispute with public employees when the broadcaster "played no part in the illegal interception," *id.* at 525. The Court specifically noted that "the outcome of [*Bartnicki*] does not turn on whether [the statute] may be enforced with respect to most violations of the statute without offending the First Amendment." *Id.* at 533.

It is true that, under the same facts as *Bartnicki*, a First Amendment defense would bar enforcement of ORS § 165.540(e). Consequently, that statute cannot be applied when the distributor of an illegal recording establishes three elements: (1) the distributor "played no part in the illegal interception," *Bartnicki*, 532 U.S. at 525, (2) the "speech [is] about a matter of public concern," *id.* at 535, *and* (3) "the speakers [on the illegally intercepted communication] had little or no *legitimate* interest in maintaining the privacy of the particular conversation," *id.* at 539 (Breyer, J., concurring) (emphasis original).

Page 15 - MOTION TO DISMISS
BM2/db5/#10477594-v1

But the existence of a First Amendment defense to the statute's application under those limited circumstances does not answer the question before the Court in a facial challenge: whether ORS § 165.540(e)'s "application to protected speech [is] 'substantial,' not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications …." *Hicks*, 539 U.S. at 119–20. In *Bartnicki*, "the speakers' legitimate privacy expectations [we]re *unusually* low, and the public interest in defeating those expectations [was] *unusually* high." 532 U.S. at 540 (Breyer, J., concurring) (emphasis added); *see also id.* at 525 (majority opinion) (noting that broadcaster's lack of involvement in the illegal recording and its subject matter being of public concern "serve to distinguish *most* of the cases that have arisen under" the statute (emphasis added)). If the federal statute in *Bartnicki* was invalid on its face, the Supreme Court would have so held. But no justice advocated such an approach: instead, six justices (including two who concurred to limit the breadth of the majority opinion) concluded that the statute could not be applied there, while three dissenting justices concluded that there was no First Amendment protection to publish the recording at all.[24]

The federal statute at issue in *Bartnicki* makes it unlawful to "use[], or endeavor[] to use," 18 U.S.C. § 2511(1)(d), an illegal recording, just as Oregon prohibits the "[u]se or attempt to use, or divulge [an illegal recording] to others," ORS § 165.540(1)(e).[25] Like the federal statute at issue in *Bartnicki*, the legitimate sweep of ORS § 165.540(1)(e) vastly exceeds the

---

[24] Justice Breyer's concurring opinion, which was joined by Justice O'Connor, can be "'meaningfully regarded as narrower than another *and* can represent a common denominator of the Court's reasoning.'" *See United States v. Davis*, 825 F.3d 1014, 1021 (9th Cir. 2016) (quoting *Lair v. Bullock*, 697 F. 3d 1200, 1205 (9th Cir. 2012)). The votes of the two concurring justices were therefore essential to the Court's majority and, as such, are controlling. *See id.* at 1021–22 ("A fractured Supreme Court decision should only bind the federal courts of appeal when a majority of the Justices agree upon a single underlying rationale and one opinion can reasonably be described as a logical subset of the other."). For this reason, the concurring opinions are the strongest authority to understand the Court's reasoning.

[25] The scienter requirement of 18 U.S.C. § 2511(1)(d) is embedded in that section, while the scienter requirement of ORS § 165.540(1)(e) is found at ORS § 161.095(2).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

narrow circumstances where *Bartnicki* would prohibit its application. Each of the three

requirements for the *Bartnicki* defense allows a substantial swath of conduct prohibited by ORS

§ 165.540(1)(e) within the bounds of the First Amendment.

First, the statute may continue to be applied when the distributor "played [a] part in the

illegal interception," *Bartnicki*, 532 U.S. at 525. The cases Veritas cited in its motion for

preliminary injunction highlight that the distributor's non-participation in the making of an

illegal recording is an essential element of the *Bartnicki* defense.[26] Consequently, if the

interceptor provided the recorder's equipment,[27] paid the interceptor,[28] or directed his or her

activities,[29] for example, *Bartnicki* would provide no defense and ORS § 165.540(1)(e) continues

to validly prohibit distribution of an illegal recording. Similarly, the statute would validly apply

when the maker of a recording waits until the two-year statute of limitations[30] elapses and then

distributes its own recording.[31]

Second, ORS § 165.540(1)(e) may be validly applied when "the conversation [is not] a

matter of public concern," *Bartnicki*, 532 U.S. at 525. Thus, the statute continues to prohibit

distribution of recordings of private organizations' meetings or that concern personal or

commercial matters, for example. *Id.* at 533 (reserving the question of whether the First

---

[26] *See Jean v. Massachusetts State Police*, 492 F.3d 24, 25 (1st Cir. 2007) (local activist published a recording provided her to her by a man she had never met before); *Democratic National Committee v. Russian Federation*, 392 F. Supp. 3d 410, 436 (S.D.N.Y. 2019) ("[T]he DNC cannot hold WikiLeaks or Assange liable for publishing the information that Russian agents stole").

[27] For example, Veritas "insiders" typically use the organization's equipment. O'Keefe Dep. (ECF 19-1) at 17:15-18:4.

[28] *E.g., id.* (ECF 19-1) at 19:17-20, *id.* (ECF 23-3) at 20:5-7 (refusing to answer whether Veritas pays "insiders").

[29] *E.g., id.* at 13:20-14:3 (refusing to answer how Veritas works with "insiders").

[30] ORS § 131.125(8)(b).

[31] This appears to be Veritas's practice in Oregon. *See* O'Keefe Dep. (ECF 19-1) at 17:15–18:4, 59:23–60:3; Compl. ¶ 34; O'Keefe Dep. (ECF 19-1) at Project Veritas INFILTRATES ANTIFA: "Practice things like an eye gouge...injure someone's eyes," (ECF 19-8), available at https://www.youtube.com/watch?v=VLR76_e_koE&feature=emb_logo.

Page 17 - MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Amendment protected distribution of "trade secrets or domestic gossip or other information of purely private concern").

Third, the statute may be validly applied when its "privacy and speech-related benefits" are proportionate to its "restrictions on speech." *Id.* at 536 (Breyer, J., concurring). *Bartnicki* "does not stand for the proposition that anyone who has lawfully obtained truthful information of public importance has a First Amendment right to disclose that information." *Boehner v. McDermott*, 484 F.3d 573, 577 (D.C. Cir. 2007). Rather, when the distributor has an independent obligation of secrecy, *id.*, or a "personal, speech-related privacy" is implicated, *Bartnicki*, 532 U.S. at 538 (Breyer, J., concurring), the prohibition on distribution is consistent with the First Amendment.

In each of these circumstances, the statute vindicates the state's legitimate interest in avoiding "[m]edia dissemination of an intimate conversation to an entire community [which] will often cause the speakers serious harm over and above the harm caused by an initial disclosure to the person who [recorded the conversation]." *Bartnicki*, 532 U.S. at 537 (Breyer, J., concurring). This "assurance of privacy helps to overcome our natural reluctance to discuss private matters when we fear that our private conversations may become public[ a]nd … consequently encourage conversations that otherwise might not take place." *Id.*; *accord id.* at 537 (majority op.) ("[T]he fear of public disclosure of private conversations might well have a chilling effect on private speech."). When people speak to another individuals, they "should not be required to take the risk that what is heard and seen will be transmitted by photograph or recording, or in our modern world, in full living color and hi-fi to the public at large or to any segment of it that the visitor may select." *Dieteman*, 449 F.2d at 249.

Because the distribution provision can continue to be applied constitutionally when the distributor participated in the recording's creation, the recording is not a matter of public concern, *or* legitimate privacy interests are at stake, the vast majority of applications of the statute are constitutionally permissible. Its overbreadth is therefore not "'substantial … relative

Page 18 - MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

to the scope of the law's plainly legitimate applications." *Hicks*, 539 U.S. at 119–20. Applying this standard in *United States v. Williams*, the Supreme Court held that the need for an exception for documentary footage of child sexual assault by soldiers in foreign countries would not establish that a child pornography statute was *substantially* overbroad. 553 U.S. 285, 302–03 (2008). The Court reasoned that "[t]he 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" *Id.* at 303 (quoting *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984)). That the distribution provision cannot be applied in the unusual circumstances illustrated in *Bartnicki* does "not establish that the statute is *substantially* overbroad." *Id.* at 303 (emphasis original).

### 2.    Veritas lacks standing to assert Count III on an as-applied basis.

Veritas does not have standing to assert the right to distribute certain recordings recognized in *Bartnicki* because it has not alleged that it has made any recordings in Oregon in which it "played no part in the illegal interception." *See Bartnicki*, 532 U.S. at 525; Compl. at p. 16 (Count III, ¶ 2). Veritas does not allege it possesses such a recording now.[32] Given that Veritas does not target its efforts to seek "insiders" from particular states, including Oregon,[33] there is no reason to think Veritas receiving an unsolicited recording from Oregon is imminent.

Even if an "insider" did contact Veritas, any resulting videos would fall outside *Bartnicki* because Veritas is deeply involved in the creation of the secret recordings it publishes. Veritas's insider program solicits participants,[34] and "elicit[s] information from insiders within a company or political campaign to provide newsworthy information that [it] may publish."[35] Veritas's CEO

---

[32] Compl. ¶ 37.  Its CEO has confirmed he does not know of any such recordings Veritas has received.  O'Keefe Dep. (ECF 19-1) at 12:12–15.

[33] O'Keefe Dep. (ECF 19-1) at 18:15-20.

[34] ECF 19-7 at 1 (Veritas webpage, "On The Inside? Contact us Today!").

[35] Compl. ¶ 36.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

admits it usually provides recording equipment to insiders,[36] and "it is almost certain that [Veritas] would be using [Veritas's] equipment to … record[]" antifa organizations in Oregon.[37]

Consequently, Veritas suffers no injury flowing from the omission of a *Bartnicki* exception to ORS § 165.540(1)(e). Nor would judicial recognition of such an exception redress any injury to Veritas. Consequently, Veritas lacks standing to assert its as-applied claim, and it must be dismissed under Rule 12(b)(1). *See Maya*, 658 F.3d at 1067; *see also* Legal Standards § II, above.

## II.    VERITAS'S PLANS ARE TOO INDEFINITE TO SUPPORT ITS AS-APPLIED CHALLENGES.

This Court should dismiss Veritas's as-applied claims[38] because they are not sufficiently definite for judicial review. The prudential ripeness doctrine is "designed to ensure that courts adjudicate live cases or controversies and do not 'issue advisory opinions [or] declare rights in hypothetical cases.'" *Bishop Paiute Tribe v. Inyo Cty*, 863 F.3d 1144, 1153 (9th Cir. 2017) (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000)). Ripeness contains both constitutional and prudential components. *See Anchorage Equal Rights Comm'n*, 220 F.3d at 1138. The prudential ripeness inquiry "requires [the Court] to first consider the fitness of the issues for judicial review, followed by the hardship to the parties of withholding court consideration." *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 837 (9th Cir. 2012). Claims that require further factual development are not fit for judicial review. *See, e.g*., *Anchorage Equal Rights Comm'n*, 220 F.3d at 1142 (finding that landlords' First Amendment claim against a ban on marital discrimination "rest[ed] upon hypothetical situations with hypothetical tenants.").

---

[36] O'Keefe Dep. (ECF 19-1) at 17:15–18:4, 19:25, (ECF 24-2) 20:1, 20:15–16.

[37] O'Keefe Dep. (ECF 19-1) at 35:12–36:20.

[38] In the parties' case management conference, Veritas confirmed that it is pursuing both facial and as-applied challenges, as stated in each count of its Complaint.

Page 20 - MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Here, Veritas asks the Court to declare unconstitutional a state statute *as applied to its conduct*. But as applied to *what* conduct? Veritas alleges generalized interests in investigating "corruption at the offices of the Oregon Public Records Advocate and the Public Records Advisory Council ... [and] the dramatic rise in violent protests in Portland."[39] Plaintiffs cannot provide the Court the details it needs to determine whether the State's interest in barring secret recordings in a particular instance violates the First Amendment.

The setting of the recording, whether the person recorded is, in fact, deceived, and the public interest in the recording are all potentially relevant. *See Bartnicki* , 532 U.S. at 536 (Breyer, J., concurring) (holding an as-applied challenge turns on whether the the State "impose[s] restrictions on speech that are disproportionate when measured against their corresponding privacy and speech-related benefits, taking into account the kind, the importance, and the extent of these benefits, as well as the need for the restrictions in order to secure those benefits"). But Veritas's Complaint itself admits that how its investigations would proceed is fundamentally unknowable. *See* Compl. ¶ 31 ("The details of … leads and developments cannot be known in advance."). The self-serving allegations that Veritas will record information of a critical public importance when openly recording of the public officials in cafes and public parks, are inherently speculative: it's impossible to know in advance whether the public employees they wish to record will say something newsworthy in those particular settings within the hearing of a Veritas employee.

Federal courts "decline[] to entertain as-applied challenges that would require [the court] to speculate as to prospective facts." *Hoye v. City of Oakland*, 653 F.3d 835, 859 (9th Cir. 2011) (collecting cases). The unavailability of concrete facts about Veritas's prospective recordings makes it impossible for the Court to weigh the First Amendment interests in the disclosure of this information against the countervailing interests of the targets of its investigations becoming

---

[39] Compl. ¶ 28.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

unwilling and unwitting participants in Veritas's expression. Veritas's investigations are simply too undefined to allow this Court to adjudicate its claims without resorting to speculation and effectively issuing an advisory opinion based on the hypotheticals that Veritas poses in its Complaint.

## CONCLUSION

Defendants' motion to dismiss should be granted and Plaintiffs' complaint should be dismissed with prejudice.

DATED November __12__, 2020.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

*s/ Brian Simmonds Marshall*
BRIAN SIMMONDS MARSHALL #196129
CARLA A. SCOTT #054725
Senior Assistant Attorneys General
SHAUNEE MORGAN #194256
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Brian.S.Marshall@doj.state.or.us
Carla.A.Scott@doj.state.or.us
Shaunee.Morgan@doj.state.or.us
Of Attorneys for Defendants

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000