Eric Winters, OSB 983790
eric@ericwinters.com
Eric C. Winters, Attorney
30710 SW Magnolia Ave
Wilsonville OR  97070
(503) 754-9096

Benjamin Barr, *pro hac vice*
ben@barrklein.com
BARR & KLEIN PLLC
444 N. Michigan Avenue Ste. 1200
Chicago, Illinois 60611
(202) 595-4671

Stephen R. Klein, *pro hac vice*
steve@barrklein.com
BARR & KLEIN PLLC
1629 K St NW Ste. 300
Washington, DC 20006
(202) 804-6676

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| PROJECT VERITAS,<br>PROJECT VERITAS ACTION FUND, | Case No.: 20-CV-01435-JR |
| Plaintiffs, | PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS |
| v. | |
| MICHAEL SCHMIDT, in his official capacity as Multnomah County District Attorney,<br>ELLEN ROSENBLUM, in her official capacity as Oregon Attorney General, | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................... 2

TABLE OF AUTHORITIES ....................................................................................... 4

INTRODUCTION ....................................................................................................... 7

FACTUAL BACKGROUND ...................................................................................... 7

LEGAL STANDARDS ............................................................................................... 8

   I.   Federal Rule of Civil Procedure 12(b)(6) ........................................................ 8

   II.   Federal Rule of Civil Procedure 12(b)(1) ....................................................... 9

   III.   First Amendment Standards............................................................................ 9

ARGUMENT ............................................................................................................. 10

   I.   The Project Veritas Parties Have Properly Stated Three First Amendment Claims......... 11

     A.   The Prohibition in Section 165.540(1)(c) Against Secret Recording Violates the First Amendment (Count II)................................................................................ 11

        1.   The Secret Recording Prohibition in Section 165.540(1)(c) is Facially Content Based.......................................................................................................... 12

        2.   The Defendants Justify the Secret Recording Prohibition in Section 165.540(1)(c) With Reference to the Content of Conversations That Are Obtained ............................. 13

        3.   The Secret Recording Prohibition in Section 165.540(1)(c) is Not Narrowly Tailored 15

     B.   The Open Recording Restrictions in Section 165.540(1)(c) Violate the First Amendment (Count I) ................................................................................ 20

        1.   Oregon's Open Recording Exceptions are Content Based ...................... 21

        2.   The Open Recording Restrictions in Section 165.540 are Not Narrowly Tailored .. 23

     C.   The Blanket Prohibitions in Sections 165.540(1)(d) and 165.540(1)(e) From Obtaining or Using Any Recordings Made in Violation of Section 165.540(1)(c) Violate the First Amendment (Count III) ....................................................................... 25

        1.   The Project Veritas Parties Have Properly Asserted A Challenge to Section 165.540(1)(d), and May Thus Challenge Section 165.540(1)(e)...................................... 26

     2.    The Prohibition Against Using or Divulging Illegal Recordings under Section 165.540(1)(e) is Content-Based and Unconstitutional.......................................................... 26

II.    The Project Veritas Parties' Claims Meet Ripeness Requirements For Their As Applied Challenges.................................................................................................................................... 28

CONCLUSION..................................................................................................................................... 30

CERTIFICATE OF SERVICE ......................................................................................................... 31

## TABLE OF AUTHORITIES

**Cases**

*ACLU of Illinois v. Alvarez*, 679 F.3d 583 (7th Cir. 2012)..........................................................10

*Am. Beverage Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749 (9th Cir. 2019)..............11, 15

*Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018) .....................................passim

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................8

*Bamdad v. Drug Enf't Admin.*, 617 F. App'x 7 (D.C. Cir. 2015)................................................16

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ...........................................................................passim

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................................................8, 9

*Boquist v. Oregon State Senate*, 432 F.Supp.3d 1221 (D. Or. 2020) ...........................................8

*Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661 (9th Cir. 2000)........................8

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010)................................................21

*Comite de Jonaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936 (9th Cir. 2011)
................................................................................................................................20, 23

*Confederated Tribes & Bands of Yakama Nation v. Airgas USA, LLC*, 435 F.Supp.3d 1103 (D.
Or. 2019).................................................................................................................................8

*Dickerson v. Raphael*, 564 N.W.2d 85 (Mich. Ct. App. 1997)...................................................16

*Dickerson v. Raphael*, 601 N.W.2d 108 (Mich. 1999) ...............................................................16

*Dietemann v. Time, Inc.*, 449 F.2d 245 (9th Cir. 1971) ..............................................................16

*Doe v. United States*, 58 F.3d 494 (9th Cir. 1995)......................................................................30

*Dreier v. United States*, 106 F.3d 844 (9th Cir. 1996), *as amended* (Feb. 4, 1997).....................9

*Elkins v. Washington County*, No. CIV 06-448-ST, 2007 WL 1342155 (D. Or. May 3, 2007).. 23,
24

*Fed. Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007) ............................28

*IMDb.com Inc. v. Becerra*, 962 F.3d 1111 (9th Cir. 2020) ........................................................18

*Katz v. U.S.*, 389 U.S. 347 (1967)...................................................................................16, 17, 24

*Libertarian Party of L.A. Cty. v. Bowen*, 709 F.3d 867 (9th Cir. 2013) ................................... 9, 26

*Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010)........................................................................ 9

*Martin v. Gross*, 340 F.Supp.3d 87 (D. Mass. 2018)................................................................. 25

*Martin v. Gross*, 380 F.Supp.3d 169 (D. Mass. 2019)........................................................... 20, 28

*Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241 (1974) ......................................................... 14

*National Institute of Family and Life Advocates v. Becerra*, 138 S.Ct. 2361 (2018) ............. 11, 15

*Oregon v. Trump*, 406 F.Supp.3d 940 (D. Or. 2019)............................................................... 9, 30

*People v. Clark*, 6 N.E.3d 154 (Il. 2014) ............................................................................. 20, 25

*Project Veritas Action Fund v. Conley*, 244 F.Supp.3d 256 (D. Mass. 2017)............................. 18

*Recycle for Change v. City of Oakland*, 856 F.3d 666 (9th Cir. 2017)....................................... 21

*Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015).............................................................. 12, 21

*State v. Evensen*, 447 P.3d 23 (Or. Ct. App. 2019).................................................................. 12

*State v. Evensen*, 455 P.3d 41 (Or. 2019) ............................................................................... 12

*State v. Haase*, 895 P.2d 813 (Or. Ct. App. 1995).................................................................... 24

*State v. Knobel*, 777 P.2d 985 (Or. Ct. App. 1989) ............................................................... 18, 23

*Sullivan v. Gray*, 324 NW.2d 58 (Mich. Ct. App. 1982) ........................................................ 18

*The Florida Star v. JBF*, 491 U.S. 524 (1989) ......................................................................... 18

*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000)............... 9, 29

*Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622 (1994) ............................................. 12

*U.S. v. Nerber*, 222 F.3d 597 (9th Cir. 2000) ...................................................................... 16, 17

*U.S. v. Wahchumwah*, 710 F.3d 862 (9th Cir. 2013) .............................................................. 16

*U.S. v. White*, 401 U.S. 745 (1971)......................................................................................... 16

*Virginia v. Hicks*, 539 U.S. 113 (2003).................................................................................... 28

*Vrooman v. Armstrong*, No. 3:16-CV-01109-YY, 2016 WL 8732334 (D. Or. July 25, 2016)...... 9

*Vrooman v. Armstrong*, No. 3:16-CV-01109-YY, 2016 WL 8738163 (D. Or. Aug. 12, 2016)..... 9

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ................................................ 12

*Wolfson v. Brammer*, 616 F.3d 1045 (9th Cir. 2010) ............................................... 29

**Statutes**

18 U.S.C. § 2510 ...................................................................................................... 13

Cal. Penal Code § 632 ............................................................................................. 19

O.R.S. § 133.721 ................................................................................ 8, 14, 19, 25

O.R.S. § 165.540 ................................................................................................ passim

O.R.S. § 165.543 .......................................................................... 8, 14, 16, 19

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ................................................................. 17

S.Rep. No. 1097, 90th Cong., 2d Sess. (1968) .................................................... 12

U.S. Code Cong. & Admin. News 1968 .................................................................. 12

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 9

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 8

**Constitutional Provisions**

U.S. Const. amend. I ........................................................................................... 7, 11

U.S. Const. amend. XIV ........................................................................................ 11

## INTRODUCTION

Privacy does not extend so far as to shield public servants and citizens from accountability—or *candor*—in any setting. In an era when audiovisual media has become ubiquitous, the Defendants argue it is appropriate to require journalists from Project Veritas and Project Veritas Action Fund ("The Project Veritas Parties") to specifically inform all participants before recording their own conversations under the same circumstances in which those journalists could legally eavesdrop and record the conversations of others. For this reason alone, Oregon Revised Statutes section 165.540 does not even pass rational basis review. The Project Veritas Parties have asserted plausible First Amendment claims, have standing to bring them, and these claims are ripe for review. The Defendants' motion to dismiss should be denied.

## FACTUAL BACKGROUND

The Project Veritas Parties submitted a detailed verified complaint signed by James O'Keefe, the founder and Chief Executive Officer of both organizations. *See* Doc. No. 1 at 18. The complaint details both the rich history of the Project Veritas Parties' newsgathering operations within and without Oregon as well as their plans to conduct specific investigations in Oregon but for the statute at issue. *See generally id.*; O.R.S. § 165.540.

The Project Veritas Parties would, but for section 165.540, obtain conversations via audiovisual recording during investigations, including those of the Oregon Public Records Advocate and continuing protests in Portland. Doc. No. 1 at 8-9 (¶¶28-31). Veritas journalists would record conversations occurring in public places including restaurants, public parks, sidewalks and streets—or places where people speak without an expectation of privacy. *Id.* (¶¶28-29). Whether recording with concealed or unconcealed devices, Veritas journalists' conversations would be obtained "without specifically informing everyone in the conversation of the recording." *Id.* (¶29(d)). The Project Veritas Parties would also obtain and use conversations

recorded by third parties in violation of the direct recording restrictions in section 165.540(1)(c). *Id.* at 12 (¶37); *see* O.R.S. § 165.540(1)(d), (e); *see also* **Exhibit 1** (Affidavit of Robert Joel Halderman).

The Defendants' recitation of other facts is largely accurate, with the exception of an important omission. *See* Doc. No. 34 at 7-9. Section 165.540 governs the recording of one's own conversations, and generally requires specifically informing all participants of the recording. However, section 165.543 permits one to record oral communications to which one is not a party in situations lacking a reasonable expectation of privacy—that is, without specifically informing any party to it. *See* O.R.S. §§ 165.543; 133.721(7). Thus, one may eavesdrop upon and secretly intercept the oral communications of others in Oregon more easily than one may obtain one's own conversations.

## LEGAL STANDARDS

### I.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits defendants to assert by motion a defense that plaintiffs have "fail[ed] to state a claim upon which relief can be granted[.]" In order "'[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face."'" *Confederated Tribes & Bands of Yakama Nation v. Airgas USA, LLC*, 435 F.Supp.3d 1103, 1113–14 (D. Or. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant." *Boquist v. Oregon State Senate*, 432 F.Supp.3d 1221, 1226 (D. Or. 2020) (citing *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000)).

## II.    Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits defendants to assert by motion the defense that the Court "lack[s] subject-matter jurisdiction" over the plaintiffs' claims. "[T]his Court is without [subject matter] jurisdiction to resolve any claim which is not ripe for review . . . or which a plaintiff lacks standing to assert." *Oregon v. Trump*, 406 F.Supp.3d 940, 954–55 (D. Or. 2019). The Court may "consider items outside the pleading . . . in ruling on [a] 12(b)(1) motion, but [should] resolve all disputes of fact in favor of the non-movant." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996), *as amended* (Feb. 4, 1997); *see* Exh. 1.

## III.    First Amendment Standards

In pre-enforcement First Amendment challenges, a plaintiff can establish standing by "demonstrat[ing] a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). "It is sufficient for standing purposes that the plaintiff *intends* to engage in a course of conduct *arguably affected* with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff." *Libertarian Party of L.A. Cty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) (citation omitted) (emphasis added). Ripeness is also a relaxed standard in First Amendment cases: "[t]he constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000)

Because the Project Veritas Parties' complaint includes detailed, well-articulated facts about their desire to engage in conduct prohibited by Oregon law, their claims have "crossed the line from conceivable to plausible." *Vrooman v. Armstrong*, No. 3:16-CV-01109-YY, 2016 WL 8732334, at *1 (D. Or. July 25, 2016), *report and recommendation adopted,* No. 3:16-CV-01109-YY, 2016 WL 8738163 (D. Or. Aug. 12, 2016) (citing *Twombly*, 550 U.S. at 570); *see*

Factual Background, *supra*. Their claims are far above plausible and the enforcement history of section 165.540 since its enactment demonstrates a credible threat of enforcement for purposes of standing and ripeness. Rather than dismiss the Project Veritas Parties' claims, it is appropriate for the case to proceed and for Defendants to meet their heavy burden in proving why Oregon law needs to broadly restrict audio recording of conversations by requiring "all participants in the conversation [to be] specifically informed that their conversation is being obtained." O.R.S. § 165.540(1)(c).

## ARGUMENT

But for section 165.540, the Project Veritas Parties would record conversations without specifically informing all participants that the conversation is being obtained. *See* Factual Background, *supra*. They seek declaratory and injunctive relief against the statute. Doc. No. 1 at 16 (Prayer for Relief ¶¶ 1-2). The Project Veritas Parties' claims are well-pled, they have standing to bring them, and their claims are ripe for review. The Defendants' motion to dismiss should be denied.

The claims are meritorious. The Defendants contend that the constitutionality of Section 165.540 is settled due to state precedent from 1989 upholding the law. *See* Doc. No. 34 at 11. But much has changed since 1989, most notably the national development of a robust body of First Amendment caselaw recognizing the constitutional right to record. Post-1989, federal and state courts have routinely invalidated laws on First Amendment grounds that suppress effective newsgathering or information gathering. This recently occurred in *Animal Legal Defense Fund v. Wasden*, where the Ninth Circuit reaffirmed that audio recording is the creation of speech. 878 F.3d 1184, 1203 (9th Cir. 2018); *see also ACLU of Illinois v. Alvarez*, 679 F.3d 583, 607 (7th Cir. 2012). Whether or not the content is published or otherwise circulated, the creation of an audio recording is fundamentally indistinct from operating a printing press. *Wasden*, 878 F.3d at

1203. Section 165.540 is thus subject to the First and Fourteenth Amendments, meaning the government must justify the law's restrictions. *See* U.S. CONST. amend. I, XIV; *see also Am. Beverage Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 755 n.1 (9th Cir. 2019) ("The Due Process Clause of the Fourteenth Amendment incorporates the First Amendment against the states."). This, the Defendants cannot do.

## I.     The Project Veritas Parties Have Properly Stated Three First Amendment Claims

Under either strict or intermediate scrutiny, the government must answer why the law is necessary and demonstrate the appropriateness of the means by which its interests are accomplished. In a preemptive challenge, it is not the burden of citizens to articulate the boundaries of the freedom at issue: it is the government's duty to justify the law's abridgement of free speech and the free press. *National Institute of Family and Life Advocates v. Becerra*, 138 S.Ct. 2361, 2377 (2018) ("*NIFLA*"). The Defendants endeavor to flip the burden, and, of most concern, their arguments in support of section 165.540 only bolster its unconstitutionality. *Compare* Doc. No. 34 at 13 (asserting this Court is in the position of "recognizing a constitutional right to secretly record") *with Wasden*, 878 F.3d at 1203–05.

### A.  The Prohibition in Section 165.540(1)(c) Against Secret Recording Violates the First Amendment (Count II)

Section 165.540 fails either strict or intermediate scrutiny. It is a unique law that, upon close examination, serves more to alter the content of what conversations are obtained rather than to govern the methods or circumstances for obtaining them. In addressing the federal interception statute in *Bartnicki v. Vopper*, the Supreme Court correctly concluded that the recording provisions in federal law—as opposed to its prohibition on third parties from obtaining or publishing such content after the fact—are content neutral. 532 U.S. 514, 526 (2001). The Court reaffirmed the precision required in distinguishing content based and content neutral laws:

> "Deciding whether a particular regulation is content based or content neutral is not always a simple task . . . . As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Turner Broadcasting System, Inc. v. FCC,* 512 U.S. 622, 642–643 . . . (1994). In determining whether a regulation is content based or content neutral, we look to the purpose behind the regulation; typically, "[g]overnment regulation of expressive activity is content neutral so long as it is '*justified* without reference to the content of the regulated speech.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 . . . (1989).
>
> In this suit, the basic purpose of the statute at issue is to "protec[t] the privacy of wire[, electronic,] and oral communications." S.Rep. No. 1097, 90th Cong., 2d Sess., 66 (1968), U.S. Code Cong. & Admin. News 1968, pp. 2112, 2153. The statute does not distinguish based on the content of the intercepted conversations, nor is it justified by reference to the content of those conversations.

*Bartnicki*, 532 U.S. at 526; *see also Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163–71 (2015). The content-based nature of section 165.540 is apparent, but not necessarily simple: it makes distinctions based on the content of audio recording *and* is justified by reference to the content of recorded conversations.

### 1.  The Secret Recording Prohibition in Section 165.540(1)(c) is Facially Content Based

Section 165.540 is a content-based restriction on its face. One may "record[] a conversation during a felony that endangers human life." O.R.S. § 165.540(5)(a). This is a blanket exception to the "specifically inform[]" requirement, for either open or secret recording, but is the only content based exception for secret recording, or recording with a concealed device.[1] The Defendants' assert that this exception is content neutral, because it is not based on "'the message a speaker conveys[.]'" Doc. No. 34 at 16 (citing *Reed*, 756 U.S. at 163–64). That

---

[1] The other exception is content neutral: "The prohibitions in subsection (1) . . . (c) of this section do not apply to subscribers or members of their family who perform the acts prohibited in subsection (1) of this section in their homes." O.R.S. § 165.540(3); see *State v. Evensen*, 447 P.3d 23, 31 (Or. Ct. App. 2019), *review denied*, 455 P.3d 41 (Or. 2019). For tailoring purposes under intermediate scrutiny, it is a dubious suggestion that one has less privacy in a conversation in another's home than one has in a crowded restaurant.

is, because one might secretly obtain a conversation about a cookie recipe during a felony that endangers human life, it is content neutral. This ignores that the content of what is being obtained must include a felony that endangers human life. *See, e.g.*, Doc. No. 1 at 9 (¶32) (Doc. No. 1-1 ("CLIP_9_CHV_ANTIFA.mov" at 08:00-08:07) (Project Veritas recording of homicide in Charlottesville)). And the Defendants all but acknowledge that the content of conversations recorded during such felonies—not just the other circumstances of the felony—is the purpose of this exception, since it facilitates "gathering evidence to allow the prosecution of a serious crime[.]" Doc. No 34 at 16. This evidence includes the conversations obtained in the moment.[2]

### 2. The Defendants Justify the Secret Recording Prohibition in Section 165.540(1)(c) With Reference to the Content of Conversations That Are Obtained

Section 165.540(1)(c) is also content based because it primarily serves to alter the content of what is recorded. Absent the statute's carve-outs, the surrounding circumstances of the recording itself do not matter: if one is a party to a conversation and wants to record it, he must "specifically inform" "all [other] participants in the conversation . . . that their conversation is being obtained." O.R.S. § 165.540(1)(c). No other circumstances, as the Defendants concede, otherwise restrict the recording: whether one is having a loud argument with someone in a public park or whispering with someone in a private office, the requirement to inform does not change. *See* Doc. No. 34 at 12. The Defendants endeavor to justify this based on privacy, but the lack of any other circumstance to distinguish between the legal and illegal obtaining of a conversation leaves the law one that only serves to alter what is recorded—that is, its content. *Cf.* 18 U.S.C. § 2510(2) (defining "oral communication" as "uttered by a person exhibiting an expectation that

---

[2] The Project Veritas Parties maintain that this exception makes the law content based on its face, but at the very least the Defendants' argument here justifies the exception "by reference to the content of" obtained conversations. *Bartnicki*, 532 U.S. at 526.

such communication is not subject to interception under circumstances justifying such

expectation[.]"); O.R.S. § 133.721(7) (same definition incorporated into the eavesdropping

statute, O.R.S. § 165.543). Privacy is thus not only a matter for the Court's tailoring analysis:

because it is not served in any objective sense, the purpose of section 165.540(1)(c) is to change

the content of conversations that are obtained. Stated more directly: notifying rioters that one is

about to record them as they describe how they just vandalized a building will surely impair, or

make impossible, that recording.

"Governmental restraint on publishing need not fall into familiar or traditional patterns to

be subject to constitutional limitations on governmental powers." *Miami Herald Pub. Co. v.

Tornillo*, 418 U.S. 241, 256 (1974). The Supreme Court in *Tornillo* found that a Florida law

requiring a newspaper to publish a reply from any candidate who was subject to criticism from

said paper violated the First Amendment. *Id.* at 256–58. Importantly, even with no reference to

or discussion of what Mr. Tornillo might have said in his rebuttal, the Court considered the law

content based. *Id.* at 256. Forcing publication of someone's words is content based regardless of

what they will actually say. Section 165.540(1)(c) does not force the Project Veritas Parties to

publish any content, but it does alter the content of what is obtained in the first place. Rather than

defend this, the Defendants all but concede that is the purpose of the law. Doc. No. 34 at 12-13

("[e]ven public officials may be *more candid* when assured that they are speaking to the

constituents before them[.]" (emphasis added)).

The Defendants go even further, justifying the restriction on the basis of the content of

the final publication. Doc. No. 34 at 12-13. One is not on guard merely from the conversation

being obtained at all, or obtained without the opportunity to tailor one's words, but that it "could

be *selectively edited and distributed* worldwide." *Id.* at 13 (emphasis added). This makes the law,

yet again, not about privacy, but a prophylactic against *the wrong kind of content*. To justify the law on the basis of one's obtained words being altered prior to publication is to justify the law based on the content of the publication. Section 165.540 is content based because of these purposes.

Oregon's regulatory recording scheme suffers from another serious constitutional flaw triggering its content-based nature: it compels individuals to convey a particular message. *NIFLA*, 138 S.Ct. at 2371. Here, Oregon compels that journalists seeking to utilize audio recording devices to announce that activity to almost anyone being recorded. As has been recognized, *NIFLA* introduced the new First Amendment rule that government-compelled speech constitutes a content-based regulation of speech. *Am. Beverage Ass'n*, 916 F.3d at 759 (Ikuta, dissenting). In the present challenge, Oregon's system forces journalists to speak a message—"I am recording"—that hobbles newsgathering protected by the First Amendment. *See* Doc. No. 34 at 15. Because the law forces the Project Veritas parties to speak when they would otherwise remain silent, the law is presumptively unconstitutional and must survive strict scrutiny. *NIFLA*, 138 S.Ct. at 2371.

### 3.  The Secret Recording Prohibition in Section 165.540(1)(c) is Not Narrowly Tailored

Section 165.540 governs the recording of one's own conversations, while section 165.543 governs recording as a third party, or eavesdropping. The laws are distinct, and so are the privacy interests behind them. Setting aside the Defendants' effort to disguise content alteration as privacy, section 165.540 is not properly tailored to protecting privacy. Under either strict or intermediate scrutiny, the ban on secretly obtaining one's own conversations under section 165.540(1)(c) is unconstitutional.

Fourth Amendment doctrine persuasively distinguishes between the privacy expectations in one's own conversations and eavesdropping. This is rooted in *Katz v. United States*, which recognized a legitimate expectation of privacy in one's phone calls from warrantless government eavesdropping. 389 U.S. 347, 351–52 (1967). But the Court was careful to note that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Id.* at 351. Thus, *Katz*'s progeny—Fourth Amendment doctrine—has long rejected an expectation of privacy against law enforcement from obtaining their own conversations:

> [T]he Supreme Court's decision in *United States v. White*, 401 U.S. 745 . . . (1971), provides that just as "a police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant," *so too may an officer make a simultaneous audio recording of his conversations with a defendant without needing a warrant.*

*Bamdad v. Drug Enf't Admin.*, 617 F. App'x 7, 8 (D.C. Cir. 2015) (emphasis added); *cf. U.S. v. Wahchumwah*, 710 F.3d 862, 868 (9th Cir. 2013) ("We hold that an undercover agent's warrantless use of a concealed audio-video device in a home into which he has been invited by a suspect does not violate the Fourth Amendment.") *with Dietemann v. Time, Inc.*, 449 F.2d 245, 249–50 (9th Cir. 1971).[3] This is detailed in the Ninth Circuit's decision in *United States v. Nerber*. 222 F.3d 597 (9th Cir. 2000). While talking to police informants in a hotel room, the

---

[3] Notably, the court in *Dietemann* construed recording with the permission of a party in a given conversation with "eavesdropping." 449 F.2d at 249. Some precedent relating to certain state laws maintains that there is a meaningful difference between recording one's own conversation in the moment and transmitting it in the moment to other parties. *See Dickerson v. Raphael*, 564 N.W.2d 85, 88, 90–92 (Mich. Ct. App. 1997), *rev'd in part,* 601 N.W.2d 108 (Mich. 1999). But Oregon law nevertheless flips the standard: an eavesdropping third party (with consent from no party to the conversation) is liable for nothing if there is no expectation of privacy, but a party in the conversation may be held liable for failure to give notice. *Cf.* O.R.S. § 165.543(1) *with* O.R.S. § 165.540(1)(c).

court determined that the defendants had "*no* reasonable expectation that they would be free from hidden video surveillance[.]" *Id.* at 604 (emphasis added). "[W]hen the informants were in the room the video surveillance was conducted *with their consent*, and *defendants* bore the risk that their activities with the informants were being surveilled." *Id.* (emphasis added). Once the informants left the room, however, "defendants' expectation to be free from hidden video surveillance was objectively reasonable." *Id.* Thus, protections against eavesdropping are meaningfully—constitutionally—distinct from obtaining one's own conversations.

This Court is not required to simply import Fourth Amendment doctrine into a First Amendment matter, but neither should it ignore the distinctions between acquiring one's own conversations and eavesdropping. *See Bartnicki*, 532 U.S. at 538 (Breyer, J. concurring) (citing *Katz*, 389 U.S. at 350–51).[4] Privacy is "[t]he quality, state, or condition of being free from public attention to intrusion into or interference with one's acts or decisions." *PRIVACY*, Black's Law Dictionary (11th ed. 2019). Yet a conversation one knowingly engages in, and the information one discloses therein, is neither intrusion or interference *per se*—it is "knowingly expose[d] to the public" whether to a police officer, someone acting under the color of law, or someone *not* acting under the color of law. *Katz*, 389 U.S. at 351. The First Amendment would prohibit a law that preemptively required someone to inform everyone in his own conversation before otherwise obtaining it, such as by writing it down, or later repeating what he has been told. Section 165.540(1)(c) only regulates recording it, restricting "a more powerful punch than a . . . recounting of an encounter[.]" *Project Veritas Action Fund v. Conley*, 244 F.Supp.3d 256, 264

---

[4] Importantly, the privacy concerns discussed in *Bartnicki* arose entirely from wiretapping, or electronic eavesdropping in which the participants did not know that their conversation was being recorded or overheard. 532 U.S. at 518–19. Moreover, the federal law at issue in that case broadly permits the recording of one's own conversations. 18 U.S.C. §2511(2)(d).

(D. Mass. 2017). But as far as the actual information derived in a conversation, "[a] recording made by a participant is nothing more than a more accurate record of what was said." *Sullivan v. Gray*, 324 NW.2d 58, 60 (Mich. Ct. App. 1982). And this is what the Project Veritas parties seek to protect—the ability to use the most effective means of recording technology to make accurate preservations of events.

Section 165.540 is not narrowly tailored due to underinclusiveness. It restricts one from obtaining or using most of one's own conversations via audio device without notice while permitting the acquisition of the same, exact conversation in most other media without notice.[5] "Because [the law] leaves open the possibility that others may disseminate . . . information unfettered, we cannot conclude that its 'selective ban ... satisfactorily accomplishes its stated purpose.'" *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1127 (9th Cir. 2020) (quoting *The Florida Star v. JBF*, 491 U.S. 524, 541 (1989)); *see State v. Knobel*, 777 P.2d 985, 988 (Or. Ct. App. 1989) ("We concluded that the statute does not prohibit taking or transcribing notes of a conversation."). It is somewhat ironic that the Defendants even dispute the accuracy of audio recording, when it is actually the most accurate and thus most powerful way to acquire and distribute information. *See* Doc. No. 34 at 13. Nevertheless, section 165.540 prohibits the acquisition of information that may otherwise be freely obtained and distributed without specifically informing parties to the conversation from which it is derived. *See Wasden*, 878 F.3d at 1205.

Section 165.540 is also underinclusive by regulating how one obtains his own conversation far more strenuously than how one obtains the conversations of others. The law

---

[5] With notice that one is obtaining the conversation, however, it will in all likelihood *not* be the same, exact conversation, which is part of the problem.

requires a participant in a conversation to specifically inform all participants prior to obtaining it with audio recording under most circumstances. Absent notice, one may not record with a concealed device unless a felony that endangers human life is in progress or unless one makes the recording in his own home. O.R.S. §§ 165.540(3), (5)(a). But if one is *not* a party to the conversation, he may record any conversation with a concealed device and without notice unless the communications are "uttered by a person [1] exhibiting an expectation that such communication is not subject to interception [2] under circumstances justifying the expectation[.]" O.R.S. §§ 133.721(7)(a); 165.543(2). A law that restricts participants to a conversation from obtaining it without notice while another law in the same regime permits third parties to secretly obtain the same so long as there is no reasonable expectation of privacy is not narrowly tailored, and that is precisely what section 165.540 does in most circumstances.

Per strict scrutiny, the privacy interests behind section 165.540—to the extent they even exist—may be served by less restrictive means. For recording, this is reflected in section 165.543: one may be prohibited from recording one's own conversations in situations where a party exhibits an expectation of privacy under circumstances justifying the expectation. *See, e.g.*, CAL. PENAL CODE § 632(c). As a matter of policy, and perhaps the First Amendment, one should be broadly protected in recording his or her own conversations: at the very least, with the content-based restrictions and purposes behind section 165.540, such prohibitions must be narrowly tailored, at the very least *more narrowly* tailored than the state's eavesdropping prohibition.

Properly defined, privacy is an important governmental interest, but law must be narrowly tailored when protecting it against audio recording, an activity that is protected by the First Amendment. Section 165.540 is not tailored to any reasonable conception of privacy. This

renders the law unconstitutional under the First Amendment. *See Martin v. Gross*, 380 F.Supp.3d 169 (D. Mass. 2019); *People v. Clark*, 6 N.E.3d 154 (Il. 2014).

This Court should also examine alternatives the government could employ to protect conversational privacy that would be less damaging to First Amendment interests. Oregon is left with a wide array of tools to do so. This inquiry was performed by the Ninth Circuit in both *Wasden* and *City of Redondo Beach*, where it was clear that there were various ways each government could achieve their stated interests while burdening little or no speech. *Comite de Jonaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 948–50 (9th Cir. 2011). For the *Wasden* court, this meant examining state statutory provisions and available torts protecting property and privacy interests. 878 F.3d at 1205. For the *Redondo Beach* court, it examined other existing ordinances that the city could use to accomplish its goals to prevent loitering while minimally impacting free speech concerns. 657 F.3d at 948–50. Here, the burden remains on the Defendants to show why Oregon's approach does not burden more speech than necessary to further its privacy interests. Because they cannot do so, the law is unconstitutional under the First Amendment.

## B.  The Open Recording Restrictions in Section 165.540(1)(c) Violate the First Amendment (Count I)

In certain circumstances, under section 165.540 one may obtain his own conversations via audio recording without specifically informing the other participants, so long as "[t]he recording is made openly and in plain view of the participants" or "with an unconcealed recording device." O.R.S. § 165.540(5)(b), (6). The former specifically permits recordings of conversations with law enforcement officers, while the later excepts a litany of events. These exceptions implicate content-based concerns. As with the law's restrictions on concealed

recording, section 165.540's regulation of unconcealed recording of one's own conversations

without notice do not meet strict or intermediate scrutiny.

### 1.  Oregon's Open Recording Exceptions are Content Based

Much like their discussion of the felony exception, the Defendants try to distinguish the

the content of a recording from the content of a conversation therein. They claim that a

"conversation in which a law enforcement officer is a participant" is content neutral because,

again, in the conversation the law enforcement officer might be discussing his favorite recipe.

O.R.S. § 165.540(5)(b). But this argument almost ignores *Reed* entirely: to meet the exception,

the obtained conversation must include a law enforcement officer. 576 U.S. at 165. Conversely,

the proscriptive norm that applies to all other recording is that non-police, government actors

must be informed for a recording to occur. A law may still be content-based if it examines the

subject of the speech (or target of the recording), but not the precise topic of the conversation.

*Recycle for Change v. City of Oakland*, 856 F.3d 666, 670 (9th Cir. 2017). The First Amendment

stands against any attempt to disfavor certain subjects or viewpoints or to distinguish among

different speakers, which may be a means to control content. *Citizens United v. Fed. Election*

*Comm'n*, 558 U.S. 310, 340 (2010). In Oregon, there is no exception, for example, for obtaining

a conversation with the Public Records Advocate or a staff member of the office. The law thus

discriminates about recordable topics (or recordable subjects) on its face—allowing the public to

more easily record the police while disfavoring similar recordings of other government agents.

Moreover, the recording must be "made while"—and so must include—"the officer . . .

performing official duties[.]"[6] O.R.S. § 165.540(5)(b)(B). To know whether the recording is

proscribed, government officials must necessarily pore over communications to examine their

---

[6] This may make the law content-based for an independent reason: is an officer, in fact,
performing official duties if the content of the conversation is wholly unrelated to his duties?

content. *Wasden*, 878 F.3d at 1204. Either as a facial distinction or purpose-based justification, this open recording provision is content based.

Section 165.540 only exacerbates its content-based nature through its allowance of open recording at government-favored events. Within section 165.540(6), individuals may openly record without specifically informing others of the recording at: (1) public or semipublic meetings, including press conferences, public speeches, or rallies, (2) regularly scheduled classes or educational activities, (3) private meetings or conferences if all others reasonably should have known that recording was being made. By statically fixing an allowable set of government-defined areas in which more permissive recording may occur, Oregon disfavors effective recording in similarly situated circumstances. So, for example, one may record a celebrity offering makeup tips at a press conference without specifically informing her of the recording, but one may not ask her questions about her recent drug arrest on the crowded streets of Portland without specifically informing her. Section 165.540 permits unconcealed recording in government-preferred, statically defined, limited opportunities, but these only to allow for staid, predictable, low-value newsgathering. Spontaneous, effective undercover journalism rarely happens at well-attended press conferences, but in organic circumstances in public places, where Oregon law chokes off this ability to record.

Oregon is free to enact reasonable time, place, and manner regulations for recording that reflect diverse privacy interests across diverse settings. But these rules must apply evenhandedly, taking care not to otherwise cripple effective forms of newsgathering. That is, government might create general classifications of areas carrying higher privacy expectations—a courthouse, a police station, or an inmate holding area and limit recording accordingly. It could also set out more relaxed standards for traditionally public areas, like sidewalks, streets, or public parks. But

it faces more rigorous constitutional scrutiny and suspicion when it narrowly approves of open recording in designated public areas but disallows it in other equally public areas. The resulting burden still remains with the state to demonstrate why its decision to choke off recording in many public areas pass constitutional muster. *City of Redondo Beach*, 657 F.3d at 948–50.

> ### 2. The Open Recording Restrictions in Section 165.540 are Not Narrowly Tailored

The Defendants' presentation of the open recording provisions in 165.540(6) would be welcome if they could be believed. "Typically, the presence of 'an unconcealed recording device' is enough for others in a conversation to 'reasonably[ ] have known' they were recorded." Doc. No 34 at 18. The evidence is to the contrary.

The Defendants note that one exception to specifically informing all participants before obtaining one's own conversation is to use an "unconcealed recording device" in "meetings" at which "all others involved knew or reasonably should have known that the recording was being made." Doc. No. 34 at 8 (*citing* O.R.S. § 165.540(6)(c)). They contend a "meeting" "would encompass a meeting of just two people." Doc. No. 34 at 8. Later in their briefing, they assert that "[t]ypically, the presence of 'an unconcealed recording device' is enough for others in a conversation to 'reasonably[] have known' they were recorded." *Id.* at 18. These assertions do not realistically comport with Oregon precedent, specifically *State v. Knobel* and *Elkins v. Washington County.* 777 P.2d 985; No. CIV 06-448-ST, 2007 WL 1342155, at *2 (D. Or. May 3, 2007). In *Knobel*, a meeting between a reporter and a Sheriff's deputy resulted in charges that were upheld even though the deputy discovered the recording by inquiring after an unconcealed recording device. 777 P.2d at 987. An on-the-record interview with an openly shown recording device plainly does not resolve the separate element to the exception that "all others involved

knew or reasonably should have known that the recording was being made." O.R.S. § 165.540(6)(c).

In *Elkins*, a citizen recorded his own conversation with a group of police officers with "his camera fully exposed[.]" 2007 WL 1342155, at *2. Elkins was ultimately not prosecuted, but his subsequent civil rights action was rejected by this Court, in part relying on Oregon precedent and concluding "'[t]he test is not whether [a party] was aware that the conversation was being recorded; it is whether the [obtaining party] gave [all parties] the required information.'" *Id.* at *7 (quoting *State v. Haase*, 895 P.2d 813, 815 (Or. Ct. App. 1995)). The reality of the enforcement of section 165.540 is that "meetings" are few and far between, and typically "an unconcealed recording device" is *not* enough for others in a conversation therein to "reasonably[] have known" they were recorded.

Section 165.540(6)(a) and (b)  are overinclusive and not narrowly tailored because they require the use of "unconcealed recording device[s]" in various circumstances that are by the very terms of the law "public." There are diminished privacy interests in these settings, certainly not ones that permit misdemeanor charges if one records using an unconcealed device. The law purports to protect conversational privacy but prohibits recording in places where one voluntarily exposes communications to others—that is, where one lacks a reasonable expectation of privacy. *See, e.g., Katz*, 389 U.S. at 351 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection"). Thus, Oregon law prohibits recording a loud argument on the street, a political provocateur on the MAX light rail, a drunk, hate-filled conversation in a parking lot, or any discussion anywhere where third parties could easily overhear it—unless the recorder notifies every single person in the conversation that they are being recorded. Because of this, the law remains substantially overbroad by prohibiting

the recording of conversations that are in fact not private. *See Martin v. Gross*, 340 F.Supp.3d 87

(D. Mass. 2018); *Clark*, 6 N.E.3d 154. This damages the ability of journalists to acquire the most

accurate preservation of important happenings in public life by a law that fails to address real

privacy concerns.

Section 165.540(6)(c) is also overinclusive and not narrowly tailored because the

exception only permits for recording conversations in private meetings or conferences if the "*all

others involved* knew or reasonably should have known *that the recording was being made*."

O.R.S. § 165.540(6)(c) (emphasis added). This, again, is more restrictive on participants than

eavesdroppers, who may record anything "uttered by a person exhibiting an expectation that such

communication is *not subject to* interception under circumstances justifying such expectation"

O.R.S. § 133.721(7) (emphasis added). As with its restrictions on secret recording, section

165.540 is also unconstitutional in regard to unconcealed or open recording.

### C.  The Blanket Prohibitions in Sections 165.540(1)(d) and 165.540(1)(e) From Obtaining or Using Any Recordings Made in Violation of Section 165.540(1)(c) Violate the First Amendment (Count III)

In their final argument on the merits, the Defendants separate sections 165.540(1)(d) and

(1)(e), discussing only the latter. *See* Doc. No. 34 at 20-25. They rely entirely on *Bartnicki* in an

effort to bypass the as applied merits of this preemptive challenge. They also, again, ignore the

distinctions between recordings made via eavesdropping and recordings made as a party to a

conversation, the latter of which was not at issue in *Bartnicki* and is permitted under federal law.

*See supra* note 4 and accompanying text. Because section 165.540(1)(c) goes far beyond federal

law by regulating the recording one's own conversations *more restrictively* than eavesdropping,

the constitutional analyses of parts (1)(d) and (1)(e)—which govern obtaining or using

conversations obtained in violation of the section, including (1)(c)—are not limited to the

*Bartnicki* analysis, but the provisions fail even in that event.

### 1.  The Project Veritas Parties Have Properly Asserted A Challenge to Section 165.540(1)(d), and May Thus Challenge Section 165.540(1)(e)

The Defendants claim that the Project Veritas Parties may not challenge the prohibition on using or divulging any illegally obtained conversation from a third party under section 165.540(1)(e) because they "do[] not allege [they] possesses such a recording now." Doc. No. 34 at 24. But in order to use or divulge such a recording, the Project Veritas Parties must obtain one in the first place, which is prohibited under section 165.540(1)(d). Having alleged that they would use or divulge what they obtain, the Project Veritas Parties have the standing and ripeness to challenge both parts (1)(d) and (1)(e), facially and as applied. *See Bowen*, 709 F.3d at 870. A law as restrictive as section 165.540(1)(c) is not permitted by *Bartnicki*, but the Project Veritas Parties have followed its precedent in the past and have properly asserted that they would do so in Oregon. *See* Doc. No. 1 at 11-12 (¶¶36-37). Moreover, for purposes of this Court's consideration of subject matter jurisdiction under Rule 12(b)(1), the Project Veritas Parties have, in the past, obtained *and* used or divulged recordings that would violate Section 165.540(1)(c), and would do so in Oregon. *See* Exh. 1 (Halderman Affidavit).

### 2.  The Prohibition Against Using or Divulging Illegal Recordings under Section 165.540(1)(e) is Content-Based and Unconstitutional

*Bartnicki* does control the content-based status of section 165.540(1)(e). The provision states that one may not "[u]se or attempt to use, or divulge to others, any conversation . . . obtained by any means prohibited by this section." *Id.* "[A]ctual involvement in the illegal interception is not necessary in order to establish a violation of that statute." *Bartnicki*, 532 U.S. at 520. This blanket prohibition includes individuals who obtained the conversation in the first place and anyone else. With third parties in mind, illegally obtained conversations may only be determined by their content. "Put another way, what [gives] rise to statutory liability . . . *[is] the information communicated on the tapes.*" *Id.* at 527 n.11 (emphasis added).

As a content-based restriction, section 165.540(1)(e) must pass strict scrutiny. As discussed previously, the breadth of section 165.540(1)(c), from which communications prohibited under part (1)(e) are derived, is so broad that it does not serve privacy interests under strict scrutiny, intermediate scrutiny, or rational basis. *See supra* parts I(A), (B).[7] But even if part (1)(c) were properly tailored, part (1)(e) is not. It provides no circumstances under which a third party may use or publish material that is illegally obtained in the first place. The law "imposes sanctions on the publication of truthful information of public concern" or any information whatsoever. *Bartnicki*, 532 U.S. at 534.

The Defendants argue that, pursuant to *Bartnicki*, it is up to the Project Veritas Parties (and any journalist or citizen) to face this law under a criminal prosecution or after one has obtained an illegal recording and seeks to divulge it—in other words, after one has broken the law. One may *then* argue that they played no part in the interception, the speech is a matter of public concern, and the speakers in the obtained conversation had little or no legitimate interest in the privacy of the conversation. Doc. No. 34 at 20 (quoting *Bartnicki*, 532 U.S. at 525, 535, 539). That is, the Defendants argue the law may impose a criminal ban over everything and survive strict scrutiny, because *Bartnicki* is a carve-out one may pursue after committing the crime. This is absurd and against settled First Amendment standards. Under these circumstances, many "persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech—harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas." *Fed. Election Comm'n v. Wisconsin Right to Life, Inc.*, 551

---

[7] The underinclusivity of the law's eavesdropping provision in section 165.543 is reflected here: not only may one eavesdrop on and record conversations with no expectation of privacy among the participants, but such recordings may be freely distributed.

U.S. 449, 494 (2007) (quoting *Virginia v. Hicks*, 539 U.S. 113, 119 (2003)). Under least

restrictive means, the law would at least incorporate the beginnings of the *Bartnicki* analysis to

cure this constitutional defect.

## II.    The Project Veritas Parties' Claims Meet Ripeness Requirements For Their As Applied Challenges

The Project Veritas Parties' complaint focuses on two investigations. Doc. No. 1 at 8-9

(¶¶ 28-29). It details the pertinent circumstances in which Veritas journalists would record: "(a)

open-air cafes . . . (b) public parks, (c) on sidewalks, and (d) in other public areas" as well as

"public sidewalks, public parks, or other areas held open to the public." *Id.* (¶¶28, 30).

Subjects—that is, other participants in journalists' recorded conversations—would include law

enforcement officers, other public officials and civilians. *Id.* (¶¶ 28, 29). These recordings would

be done with concealed and unconcealed devices and, in any event, without specifically

informing participants to any conversation that it is being obtained. *Id.* at 12 (¶38). These

assertions detail myriad ways in which the Project Veritas parties would violate section 165.540,

and also myriad circumstances under which this Court may find the law unconstitutional as

applied. The Project Veritas Parties' claims meet the prudential ripeness doctrine. For example,

if the Project Veritas Parties' facial challenges are rejected, the Court might find the law to be

unconstitutional as applied to the secret recording of public officials performing their duties in

public places.[8] *See Martin*, 380 F.Supp.3d 169; *see also* Doc. No. 1 at 8 (¶28).

"In evaluating the prudential aspects of ripeness, our analysis is guided by two

overarching considerations: 'the fitness of the issues for judicial decision and the hardship to the

---

[8] The parties have already agreed to a schedule of nearly two months to brief "the form of declaratory judgment and the appropriateness, scope and form of an injunction" should the Project Veritas Parties prevail. Doc. No. 31 at 4. The Project Veritas Parties need not brief this in their complaint.

parties of withholding court consideration.'" *Thomas*, 220 F.3d at 1141. The Project Veritas Parties' extensive record of audio recording outside of Oregon (which is detailed in their complaint) would violate section 165.540. *See, e.g.*, Doc. No. 1-1 ("CLIP_10_CHV_ANTIFA.mov" at 06:15-06:30, 13:30-14:40). They have been censored from undertaking these activities in Oregon due to section 165.540. *See* Doc. No. 1 at 8-9 (¶¶28-31). They continue to be censored from their activities by section 165.540. *Id.* at 12 (¶38). Their detailed complaint offers a fit record that is far more precise than complainants who merely believe a law is unconstitutional and might, someday, affect them. *See Thomas*, 220 F.3d at 1142.

The Defendants demand that the Project Veritas Parties make factual assertions that have no bearing whatsoever on the operation of section 165.540, such as "whether the person recorded is, in fact, deceived, and the public interest in the recording[.]" Doc. No. 34 at 26. They combine this with a selectively edited excerpt of the complaint: in addition to the investigation of the Public Records Advocate and the ongoing unrest in Portland, the Project Veritas Parties would undertake other investigations. Doc. No. 1 at 9 (¶31). "The details of these leads and developments cannot be known in advance. *The methods of investigation, however, are all plainly illegal under section 165.540.*" *Id.* (emphasis added). The complaint amply bears this out. The issues are fit for review.

The hardship endured by the Project Veritas Parties is censorship, which is a "constitutionally-recognized injury[.]" *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010). The Project Veritas Parties' case could not be more fit for review, nor their hardship more tangible: this case could not be riper.

**CONCLUSION**

For the foregoing reasons, the Defendants' motion to dismiss should be denied. However, if this Court finds a deficiency in the Project Veritas Parties' pleadings for purposes of stating a claim, or establishing standing or ripeness, "the court must grant the plaintiff leave to amend unless it 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Trump*, 406 F.Supp.3d at 955 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Dismissal is inappropriate, but at a minimum any dismissal at this time should be without prejudice. *Cf.* Doc. No. 34 at 27.

> Respectfully submitted,
>
> PROJECT VERITAS,
> PROJECT VERITAS ACTION FUND,
>
> BY THEIR ATTORNEYS,
>
> /s/ Stephen Klein
> Stephen R. Klein, *pro hac vice*
> steve@barrklein.com
> BARR & KLEIN PLLC
> 1629 K St NW Ste. 300
> Washington, DC 20006
> (202) 804-6676
>
> Benjamin Barr, *pro hac vice*
> ben@barrklein.com
> BARR & KLEIN PLLC
> 444 N. Michigan Avenue Ste. 1200
> Chicago, Illinois 60611
> (202) 595-4671
>
> Eric Winters, OSB 983790
> eric@ericwinters.com
> Eric C. Winters, Attorney
> 30710 SW Magnolia Ave
> Wilsonville OR  97070
> (503) 754-9096

December 3, 2020.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2020, I electronically filed the foregoing paper with

the Clerk of the Court using the ECF system which will send notification of such filing to all

registered ECF participants listed for this case.


/s/ Stephen Klein