ELLEN F. ROSENBLUM
Attorney General
BRIAN SIMMONDS MARSHALL #196129
CARLA A. SCOTT #054725
Senior Assistant Attorneys General
SHAUNEE MORGAN #194256
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Brian.S.Marshall@doj.state.or.us
          Carla.A.Scott@doj.state.or.us
          Shaunee.Morgan@doj.state.or.us


Attorneys for Defendants




IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| PROJECT VERITAS, PROJECT VERITAS ACTION FUND, | Case No. 3:20-CV-01435-MO |
| Plaintiffs, | REPLY TO PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS |
| v. | |
| MICHAEL SCHMIDT, in his official capacity as Multnomah County District Attorney, ELLEN ROSENBLUM, in her official capacity as Oregon Attorney General, | |
| Defendants. | |

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.     NONE OF VERITAS'S CLAIMS SURVIVES THE MOTION TO DISMISS. . ............. 2

   A.   Count II Fails to State a Claim. ...................................................................... 2

      1.   The Secret Recording Law is Content-Neutral. ............................................ 2

         a.   The law is content-neutral on its face. ............................................... 2

         b.   The law's justifications are content-neutral. ............................................. 5

      2.   The Secret Recording Law is Narrowly Tailored. ........................................... 6

   B.   Count I's Challenge to the Scope of the Open Recording Exceptions Fails to State a Claim........................................................................................................... 11

      1.   ORS § 165.540(6) is Content-Neutral and Narrowly Tailored to Serve a Significant Governmental Interest. ..................................................................................... 12

      2.   ORS § 165.540(5)(b) is Constitutional. ..................................................... 14

   C.   Count III Should Be Dismissed. ................................................................... 17

      1.   Count III's Facial Challenge Fails to State a Claim. ..................................... 17

      2.   Veritas Does Not Have Standing to Assert its Count III As-Applied Challenge. ....... 18

II.    VERITAS'S PLANS FOR FUTURE RECORDINGS ARE INSUFFICIENTLY DETAILED FOR ITS AS-APPLIED CLAIMS TO BE RIPE. ....................................... 20

CONCLUSION................................................................................................................ 22

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# TABLE OF AUTHORITIES

## Cases

*Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. D.C.*, 846
F.3d 391 (D.C. Cir. 2017) ....................................................................... 4

*American Beverage Ass'n v. City and Cty. of San Francisco*, 916 F.3d 749 (9th Cir. 2019) ....... 11

*Animal Legal Defense Fund v. Wasden,* 878 F.3d 1184 (9th Cir. 2018) ............................. 3, 5, 15

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) ............................................ 21

*Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) ..................................... 4

*Bartnicki v. Vopper,* 532 U.S. 514 (2001) ........................................................... 1, 5-6, 12, 17, 18

*Building Indus. Assoc.—Bay Area v. City of Oakland*, 289 F.Supp.3d 1056 (N.D. Cal. 2018) ... 11

*California v. Greenwood*, 486 U.S. 35 (1988) ................................................................................ 9

*Carey v. Brown*, 447 U.S. 455 (1980) ........................................................................................... 4

*Carney v. Adams*, --- S.Ct. ----, No. 19–309, 2020 WL 7250101 (Dec. 10, 2020) ................ 19, 20

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) ........................................... 15, 16

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994) .................................................................................. 4

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .................................................................. 19

*Dietemann v. Time, Inc.*, 449 F.2d 245 (9th Cir. 1971) ......................................................... 6, 10

*Eldred v. Ashcroft*, 537 U.S. 186 (2003) ...................................................................................... 5

*Elkins v. Washington Cty.*, No. CIV 06-448-ST, 2007 WL 1342155 (D. Or. May 3, 2007) ....... 14

*Expressions Hair Design v. Schneiderman*, 137 S.Ct. 1144 (2017) ........................................... 10

*Frisby v. Schultz*, 487 U.S. 474 (1988) ......................................................................................... 4

*Frudden v. Pilling*, 742 F.3d 1199  (9th Cir. 2014) .................................................................... 10

*Glendale Assocs., Ltd. v. N.L.R.B.*, 347 F.3d 1145 (9th Cir. 2003) ............................................ 4

*IMDb.com Inc. v. Becerra*, 962 F.3d 1111 (9th Cir. 2020) .................................................... 3, 7

*Katz v. U.S.*, 389 U.S. 347 (1967) .............................................................................................. 13

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*League of United Latin Am. Citizens v. Perry*, 548 U.S. 399 (2006) ........................................... 17

*Libertarian Party of Los Angeles County v. Bowen*, 709 F.3d 867 (9th Cir. 2013) ..................... 19

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192 (9th Cir. 2016) .................... 3

*McCullen v. Coakley*, 573 U.S. 464 (2014) ...................................................................................... 5

*Nat'l Inst. of Family and Life Advocates v. Becerra,* 138 S. Ct. 2361 (2018) ............................. 11

*In re Nat'l Sec. Letter*, 863 F.3d 1110 (9th Cir. 2017) .................................................................... 3

*Norton v. City of Springfield, Ill.*, 806 F.3d 411 (7th Cir. 2015) ..................................................... 3

*One World One Family Now v. City & Cty. of Honolulu*, 76 F.3d 1009 (9th Cir. 1996) .............. 4

*Project Veritas Action Fund v. Rollins*, No. 19-1586, 2020 WL 7350243 (1st Cir. Dec. 15, 2020)

.............................................................................................................. 5, 16, 17, 18, 20, 21, 22

*Recycle for Change v. City of Oakland*, 856 F.3d 666 (9th Cir. 2017) ......................................... 15

*Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015) ......................................................... 2, 3, 14-15

*Rumsfeld v. Forum for Academic and Inst. Rights, Inc.*, 547 U.S. 47 (2006) .............................. 10

*State v. Bichsel*, 101 Or. App. 257 (1990) ..................................................................................... 14

*State v. Caraher*, 293 Or. 741 (1982) .............................................................................................. 9

*State v. Knobel*, 97 Or. App. 559 (1989) .......................................................................... 8, 12, 13

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ............................................................ 21

*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2000) ............................ 22

*Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622 (1994) .............................................. 3, 6, 11, 15

*United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960 (9th Cir. 2004) ................ 20

*United States v. Albertini*, 472 U.S. 675 (1985) .............................................................................. 6

*United States v. Jacobsen*, 466 U.S. 109 (1984) .............................................................................. 9

*United States v. Schales*, 546 F.3d 965 (9th Cir. 2008) ............................................................... 18

*Virginia v. Hicks*, 539 U.S. 113 (2003) ........................................................................................ 18

*W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) ........................................................ 10

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) .......................................... 2, 3, 6, 12

*Wooley v. Maynard*, 430 U.S. 705 (1977) ............................................................. 10

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985)....... 7

**Statutes**

Or. Rev. Stat. § 133.540............................................................................................ 7, 8

Or. Rev. Stat. § 133.543............................................................................................ 7, 8

Or. Rev. Stat. § 133.543(1)(c).................................................................................. 8, 9

Or. Rev. Stat. § 133.721(5)........................................................................................ 8

Or. Rev. Stat. § 133.721(7)........................................................................................ 14

Or. Rev. Stat. § 133.721(7)(a)................................................................................... 8

Or. Rev. Stat. § 165.540............................................................................... 1, 9, 16

Or. Rev. Stat. § 165.540(1)(c)................................................................. 1, 3, 10, 11, 18

Or. Rev. Stat. § 165.540(1)(d)................................................................................. 17

Or. Rev. Stat. § 165.540(1)(e)................................................................................. 17, 18

Or. Rev. Stat. § 165.540(5)(a)................................................................................. 4

Or. Rev. Stat. § 165.540(5)(b) .................................................... 11, 14, 15, 16, 17

Or. Rev. Stat. § 165.540(5)(b)(B)....................................................................... 15, 17

Or. Rev. Stat. § 165.540(6)................................................................................. 12, 13

Or. Rev. Stat. § 165.540(6)(a).............................................................................. 13

Or. Rev. Stat. § 165.540(6)(c)............................................................................. 13, 14

Or. Rev. Stat. § 165.540(a)................................................................................... 13

Or. Rev. Stat. § 165.540(c) ............................................................. 7, 8, 19, 20, 21

Or. Rev. Stat. § 165.540(e) ........................................................................... 1, 19

Or. Rev. Stat. § 41.910(1)..................................................................................... 9

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# INTRODUCTION

Oregonians have a legitimate interest in protecting their reasonable expectation that they will not be recorded without their knowledge. Oregon's Secret Recording Law, ORS § 165.540, is a balanced and content-neutral law that advances this interest and protects Oregonians from becoming unwitting and unwilling participants in another's expression. The Secret Recording Law also respects the First Amendment rights of individuals, including journalists, to gather and use audio in their expressive activities. It does so by allowing the recording of any conversation so long as the other parties to the conversation are "specifically informed." Recording is also allowed without such notice in certain enumerated circumstances that do not turn on the recording's content. ORS § 165.540(1)(c) and (5)–(6). Therefore, Veritas's[1] challenge to the law fails. *See* Argument §§ I.A–I.B, below.

The Secret Recording Law also protects Oregonians' interests against the distribution of illegal recordings. ORS § 165.540(e). Veritas's facial challenge to this provision fails because, like the federal statute at issue in *Bartnicki v. Vopper*, most applications of the distribution provision are lawful. *See* 532 U.S. 514 (2001); Argument § I.C.1, below. An as-applied challenge to the law under *Bartnicki* could succeed in some circumstances, but Veritas lacks standing to bring an as-applied challenge here because Veritas has no illegal recordings to distribute other than those it made itself. *See* § I.C.2, below. Veritas's as-applied challenges are also too indefinite to be fit for judicial review and are therefore barred under the prudential ripeness doctrine. To adjudicate an as-applied challenge, the Court must know what facts it is applying the statute to. Veritas's hypotheticals about the recordings it hopes to make are too indefinite to be ripe. *See* Argument § II, below.

The Complaint should be dismissed with prejudice.

---

[1] "Veritas" refers collectively to both Plaintiffs: Project Veritas and Project Veritas Action Fund.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**ARGUMENT**

**I.    NONE OF VERITAS'S CLAIMS SURVIVES THE MOTION TO DISMISS.**

**A.    Count II Fails to State a Claim.**

The Secret Recording Law is a content-neutral requirement that protects individuals' interest in not being recorded without their knowledge. Section I.A.1 rebuts Veritas's claim that the Secret Recording Law is content-based. Given that the law is content-neutral, it must be upheld because it is (1) "narrowly tailored to serve a significant government interest," and (2) "leave[s] open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Section I.A.2 addresses Veritas's challenge to the law's compliance with the narrow tailoring requirement, including Veritas's argument that the requirement that it "specifically inform" others while recording is compelled speech. Veritas does not contend the law fails to leave open sufficient alternative channels.

**1.    The Secret Recording Law is Content-Neutral.**

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). The courts also consider laws to be content-based when they "cannot be "'justified without reference to the content of the regulated speech,'" or were adopted by the government 'because of disagreement with the message [the speech] conveys[.]'" *Id.* at 164 (quoting *Ward*, 491 U.S. at 791 ). Because the Secret Recording Law is not content-based under either test, it is content-neutral and subject to intermediate scrutiny.

**a.    The law is content-neutral on its face.**

"[A] speech regulation targeted at specific *subject matter* is content based…." *Reed*, 576 U.S. at 169. Thus, in *Reed*, the Supreme Court held that regulating messages about a "political candidate" differently from those advertising "an assembly of like-minded individuals" were "paradigmatic example[s] of content-based discrimination." *Id.* In other cases, courts have held

Page 2 -    REPLY TO PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS

regulations of particular subject matters such as "agricultural operations,"[2] the receipt of an FBI records request,[3] panhandling,[4] and "date of birth or age information"[5] to be content-based. On the other hand, distinctions based on the medium of the communication or otherwise unrelated to the message conveyed are content-neutral. *See Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 648 (1994) (holding requirement to carry local television stations is content-neutral); *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1200 (9th Cir. 2016) (holding ordinances banning mobile billboards are content-neutral because they "do not single out a specific subject matter for differential treatment, nor is any kind of mobile billboard exempted from regulation based on its content").

Both the general rule established by ORS § 165.540(1)(c) and its exceptions are content-neutral. The general prohibition of ORS § 165.540(1)(c) applies regardless of the subject-matter of the conversation recorded. That secret recording can be intertwined with expression does not make this rule content-based. New York City requiring a Central Park concert to turn down the volume was content-neutral, even though the music was expressive. *See Ward*, 491 U.S. at 792. Similarly, the federal government requiring that cable companies carry local channels was content-neutral, even though those local channels distributed broadcasts protected by the First Amendment. *See Turner Broad. Sys.*, 512 U.S. at 643–45. But because neither law's application turned on "the topic discussed or the idea or message expressed," *Reed*, 576 U.S. at 163, neither was content-based.

---

[2] *Animal Legal Defense Fund v. Wasden, 878 F.3d 1184, 1204 (9th Cir. 2018).*

[3] *In re Nat'l Sec. Letter*, 863 F.3d 1110, 1123 (9th Cir. 2017).

[4] *Norton v. City of Springfield, Ill.*, 806 F.3d 411, 412 (7th Cir. 2015) (holding restricting panhandling, defined "oral request for an immediate donation of money," is content-based after *Reed*).

[5] *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020) (quotations omitted).

Page 3 -   REPLY TO PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS

As for exceptions, "courts consider a rule content-based when it establishes a general ban on speech, but maintains exceptions for speech on certain *subjects*." *Glendale Assocs., Ltd. v. N.L.R.B.*, 347 F.3d 1145, 1155 (9th Cir. 2003) (citing *City of Ladue v. Gilleo*, 512 U.S. 43, 60 (1994)) (emphasis added). For example, a prohibition on all residential picketing is content-neutral,[6] but excepting one subject matter, such as labor disputes, from that prohibition renders it content-based.[7] Likewise, a law may ban all unsolicited robocalls, but exempting only robocalls attempting to collect government debts from that prohibition subjects the law to strict scrutiny. *See Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020). But an exception is only content-based when it turns on the *subject matter* of the communication, and thus discriminates against disfavored topics. *See One World One Family Now v. City & Cty. of Honolulu*, 76 F.3d 1009, 1012 n.5 (9th Cir. 1996) (finding exceptions to an ordinance prohibiting sidewalk sales allowing the sale of newspapers, concessions, and parade-related buttons and souvenirs did not render the ordinance content-based); *Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. D.C.*, 846 F.3d 391, 405 (D.C. Cir. 2017) (holding different rules for signs announcing events are not content-based "as long as it does not distinguish among types of event[s] based on content").

Here, the exceptions to the Secret Recording Law's prohibitions do not turn on the content of the communication, thus the law is not content-based. The prohibition on secret recording "do[es] not apply to … [a] person who records a conversation during a felony that endangers human life." ORS § 165.540(5)(a). Whatever the *content* of the recording, so long as it is made when a life-threatening felony is being committed (which is conduct, not speech), it is permitted without informing others of the recording. Thus, this exception does not "pivot[] on the content of the recording" and does not require "viewing the recording [to] make a

---

[6] *Frisby v. Schultz*, 487 U.S. 474 (1988).
[7] *Carey v. Brown*, 447 U.S. 455 (1980).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

determination about criminal liability." *Wasden*, 878 F.3d at 1204. Veritas belittles this argument by suggesting it would mean recording a cookie recipe during a life-threatening felony would be lawful. Pls.' Resp. (ECF No. 35) at 12–13. But that's exactly how the statute operates, and that's why that exception is not content-based. In *Wasden*, the Ninth Circuit found Idaho's Ag-Gag statute was content-based precisely because "a videographer could record an after-hours birthday party among co-workers … but not the animal abuse, feedlot operation, or slaughterhouse conditions." 878 F.3d at 1204; *cf. McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (concluding a statute establishing a 35-foot buffer zone near abortion clinics did not "draw content-based distinctions on its face"). This exception treats all recordings during the commission of a life-threatening felony identically and therefore is content-neutral on its face.

### b. The law's justifications are content-neutral.

The justification for the Secret Recording Law is to provide individuals fair notice when another person is recording them. *See* Defs.' Mot., at 7–9. This requirement protects individuals' First Amendment interest in not unwittingly becoming part of another's expressive content. *See Project Veritas Action Fund v. Rollins*, No. 19-1586, 2020 WL 7350243, at *20 (1st Cir. Dec. 15, 2020) ("Notice of recording may help [] private individuals avoid the shame or embarrassment of the recording of their unfiltered comments or help prevent their statements from being taken out of context."). "The First Amendment securely protects the freedom to make—*or decline to make*—one's own speech; it bears less heavily when speakers assert the right to make other people's speeches." *Eldred v. Ashcroft*, 537 U.S. 186, 221 (2003) (rejecting First Amendment challenge to copyright extension) (emphasis added). Veritas argues that the fact that the parties agree that individuals speak differently when they are being recorded shows that the law's justification is content-based. Pls.' Resp. at 13–14. But individuals, not the government, determine what they do and do not say when recorded. And individuals have a recognized interest in avoiding "public disclosure of private conversations…." *Bartnicki*, 532

Page 5 -    REPLY TO PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS

U.S. at 533. The State has a legitimate interest in avoiding the "chilling effect on private speech" that recording without notice might cause. *Id.* The Ninth Circuit has recognized these interests extend to recordings by the other party to a conversation. *See Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir. 1971). The State's interest does not turn on the content of the recording, only whether individuals have had fair notice that they are being recorded.

Nor does the purpose of the life-threatening felony exception—to allow the gathering of evidence of serious crimes—make the exception content-based. The expression Veritas seeks to protect is the content it creates with the raw footage it records. *See* Compl. ¶ 44. Veritas argues that the State's purpose is to favor videos incorporating footage of life-threatening crimes over other videos. Pls.' Resp. at 13. But the State is not motivated by a desire to favor *expression* that uses video of life-threatening crimes. *See Ward*, 491 U.S. at 791 (holding the purpose inquiry turns on "whether the government has adopted a regulation of speech because of disagreement with the message it conveys"); *Turner Broad. Sys.*, 512 U.S. at 647 (holding must-carry provisions were content-neutral because the "purpose is unrelated to the content of expression disseminated"). Rather, the purpose of the exception is to allow *evidence* to be preserved and used for law enforcement. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward*, 491 U.S. at 791. Because the evidentiary purpose of the life-threatening felony exception is unrelated to any expressive use of such videos, the State's purpose is not content-based.

## 2. The Secret Recording Law is Narrowly Tailored.

Because the Secret Recording Law is content-neutral, "the requirement of narrow tailoring is satisfied 'so long as the … regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward*, 491 U.S. at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)) (alteration in original). "So long as

Page 6 -    REPLY TO PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS

the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id.* at 800. If the law were content-based, thus triggering strict scrutiny, the State would have a far higher burden: "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1125 (9th Cir. 2020) (cited in Pls.' Resp. at 18). But that higher standard does not apply to a content-neutral law.

Veritas argues the Secret Recording Law is not narrowly tailored because it is underinclusive. Pls.' Resp. at 18–19. As a threshold matter, that a policy may be underinclusive is immaterial because, under intermediate scrutiny, "governments are entitled to attack problems piecemeal, save where their policies implicate rights so fundamental that strict scrutiny must be applied." *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 n.14 (1985). Content-neutral laws fail the First Amendment's narrow-tailoring requirement when they prohibit too much speech, not too little. Thus, Veritas's claim that Oregon's laws do not impose identical restrictions on equally or more offensive conduct has no constitutional significance.

Even if underinclusiveness mattered, neither of Veritas's grounds for claiming ORS § 133.540 is underinclusive withstand scrutiny. Veritas first argues that allowing any party to a phone call to record without warning is unjustified. Pls.' Resp. at 18 & n.5. But Oregon is entitled to make the judgment that recording in-person conversations is less common and more corrosive to social trust than recording a phone call.

Veritas's other underinclusiveness argument relies on a misreading of both the Secret Recording Law, ORS § 133.540, and the statute that specifically addresses eavesdropping, ORS § 133.543. First, Veritas ignores that eavesdropping is also covered by ORS § 165.540(c). So

Page 7 -     REPLY TO PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS

long as "a conversation" is "obtain[ed]," it is covered under ORS § 165.540(c) regardless of whether the recorder participates in the conversation or not. Therefore, Veritas's claim that Oregon's laws are "more strenuously" applied to one's "own conversations" than "the conversations of others" is simply wrong.[8] *See* Pls.' Resp. at 18.

Second, Veritas claims that ORS § 133.543 "permits third parties to secretly obtain [a conversation] so long as there is no reasonable expectation of *privacy*." *Id.* at 19 (emphasis added). But that's not what the statute says: the eavesdropping law prohibits recording when individuals are justified in believing they are not being *recorded*, not when they have an abstract expectation of privacy. The statute defines the oral recording prohibition to include "[a]ny oral communication … uttered by a person exhibiting an expectation that such communication is not subject to *interception* under circumstances justifying such expectation." ORS § 133.721(7)(a) (emphasis added). As defined in the statute, "interception" means recording or listening through a mechanical device.[9] In other words, unless a person knows of or consents to having a conversation recorded by a third party, that recording is illegal.

While it is true that ORS § 133.540 spells out in detail the circumstances in which a person need not expect to be recorded while ORS § 133.543 does not, the result is the same: whether the speaker recorded has an abstract expectation of privacy or not, a person cannot unexpectedly record other speakers without their knowledge. Individuals ordinarily do not expect to be recorded. Accordingly, under ORS § 133.543(1)(c), a specific warning is generally required. But in certain settings, such as rallies and public meetings, recording is more common and specific warnings are less practical, so open recording is permitted without a specific

---

[8] Veritas characterizes their recordings as being of their "own" conversation, but it is seeking to record others' words without telling them. *See also State v. Knobel*, 97 Or. App. 559, 565 (1989) ("the statute does not forbid the recording of one's own words").

[9] "'Intercept' means the acquisition, by listening or recording, of the contents of any … oral communication through the use of any electronic, mechanical or other device." ORS § 133.721(5).

Page 8 -     REPLY TO PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS

warning. Veritas may quibble that the contours of the law are not the same for telephone calls and in-person conversations, or disagree with Oregon's policy decision that both eavesdropping and other secret recording are worthy of protection, but neither judgment makes ORS § 133.543(1)(c) unconstitutional.

Veritas also argues that the Secret Recording Law is suspect because it bars private parties from engaging in conduct that would be allowed of the government under the Fourth Amendment. Pls.' Resp. at 16–18. As Veritas concedes, these are two distinct bodies of law. *See* Pls.' Resp. at 17; *California v. Greenwood*, 486 U.S. 35, 44 (1988) (rejecting argument that the "concepts of privacy under the laws of each State are to determine the reach of the Fourth Amendment"). Fourth Amendment jurisprudence is particularly irrelevant to the First Amendment question presented here given that the Fourth Amendment "proscrib[es] only governmental action." *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *see also id.* (noting the Fourth Amendment is wholly inapplicable "to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." (citations and quotations omitted)).

In addition, the floor of personal privacy established by the Fourth Amendment against government searches is not a ceiling prohibiting the states from enacting greater protections for privacy in other contexts. The Fourth Amendment does not even establish the ceiling for state protections against unreasonable searches and seizures. *See, e.g.*, *State v. Caraher*, 293 Or. 741, 750–51 (1982) (noting that the Oregon Supreme Court may "interpret [Oregon's] own constitutional provision regarding search and seizure and to impose higher standards on searches and seizures under our own constitution than are required by the federal constitution."); ORS § 41.910(1) (barring use of evidence obtained in violation of ORS § 165.540 in criminal prosecutions).

Page 9 -   REPLY TO PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS

In any event, Ninth Circuit precedent rejecting the argument that individuals lose their interest in not being recorded by anyone with whom they voluntarily speak controls here. *See Dietemann*, 449 F.2d at 249. *Dietemann* precludes importing Veritas's understanding of certain Fourth Amendment principles to the First Amendment questions here.

This Court should also reject Veritas's argument that the notification required under ORS § 165.540(1)(c) is a form of compelled speech subject to strict scrutiny. "[V]irtually all government regulation *affects* speech," but not all such regulation is subject to heightened scrutiny. *See Expressions Hair Design v. Schneiderman*, 137 S.Ct. 1144, 1152 (2017) (Breyer, J., concurring in judgment) (emphasis added). The compelled speech doctrine is applicable in cases where the speech at issue is in fact dictated by the challenged law. *See, e.g., W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 629 (1943) (where students were required to salute and recite the Pledge of Allegiance); *Wooley v. Maynard*, 430 U.S. 705, 707 (1977) (where motorists were required to display the "Live Free or Die" motto on their vehicles); *Frudden v. Pilling*, 742 F.3d 1199, 1201 (9th Cir. 2014) (where students were required to wear a uniform with a written message). Courts apply heightened judicial scrutiny when government-compelled speech forces an individual "to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable." *Wooley*, 430 U.S. at 715. Speech that is conditional to regulated activity is not compelled. *See Rumsfeld v. Forum for Academic and Inst. Rights, Inc.*, 547 U.S. 47, 62 (2006) (finding requirement that schools send emails or post notices about military recruiters was "only 'compelled' if, and to the extent, the school provides such speech for other recruiters.").

Here, ORS § 165.540(1)(c) regulates the conditions under which an individual may record a conversation. It requires that if individuals choose to record a conversation, they must first specifically inform all participants in that conversation. The compelled speech Veritas points to is "plainly incidental" to this regulation. *See Rumsfeld*, 547 U.S. at 62. The law does not dictate how Veritas's agents or any other individuals "specifically inform" the other participants

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

in the conversations, it just mandates that they do so if they wish to record. Veritas can provide that notice in whatever way it chooses; through the verbal warning of "I am recording," Pls.' Resp. at 15, or by placing a placard on a table that reads "Recording in progress." Both cases Veritas cites illustrate this important distinction. In *National Institute of Family and Life Advocates v. Becerra*, the government required private pregnancy clinics to display and distribute *the government's* notices about state-funded services, including abortion, and licensing requirements. 138 S. Ct. 2361, 2369–70 (2018). Similarly, the ordinance at issue in *American Beverage Ass'n v. City and County of San Francisco* required health warnings on advertisements for sugar-sweetened drinks, the exact details, content, placement, and size of which were government mandated. 916 F.3d 749, 753 (9th Cir. 2019).

The notification required under the Secret Recording Law bears none of the markers of compelled speech subject to strict scrutiny: it does not force individuals to adopt or express any particular viewpoint or to alter their own messages. *See Turner Broad. Sys.*, 512 U.S. at 655 (rejecting the application of struct scrutiny because the regulation that cable broadcasters must carry local channels was content-neutral and did not force the broadcasters to alter their own message). To the extent that any speech is compelled under ORS § 165.540(1)(c), "the degree of compulsion is minimal" and subject to a "far more relaxed" standard of judicial review. *See Building Indus. Assoc.—Bay Area v. City of Oakland*, 289 F.Supp.3d 1056, 1060 (N.D. Cal. 2018). ORS § 165.540(1)(c) would meet that standard, and Veritas fails to provide any basis for concluding otherwise.

Count II should be dismissed.

**B.    Count I's Challenge to the Scope of the Open Recording Exceptions Fails to State a Claim.**

The Secret Recording Law's exceptions to the general requirement that individuals provide notice before recording a conversation, ORS § 165.540(5)(b) and (6), are content-neutral. These open recording provisions are also narrowly tailored to Oregonians' legitimate

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

expectations of when and under what circumstances they will be recorded. Because both provisions are content-neutral and are narrowly tailored to serve a significant governmental interest, they do not violate the First Amendment. *See Ward*, 491 U.S. at 791.

**1. ORS § 165.540(6) is Content-Neutral and Narrowly Tailored to Serve a Significant Governmental Interest.**

ORS § 165.540(6) allows recordings made with an "unconcealed recording device" of "[p]ublic or semipublic meetings" and "classes" as well as "[p]rivate meetings … if all others involved knew or reasonably should have known that the recording was being made." Veritas argues that these exceptions are content-based and "disfavor[] effective recording in similarly situated circumstances." Pls.' Resp. at 22. Veritas compares a celebrity speaking at a press conference to a conversation with a celebrity on a public sidewalk. *Id.* But those circumstances are dissimilar: people expect to be recorded at press conferences. *See* Compl. ¶ 42. That is exactly the point. Individuals are more likely to anticipate being recorded in the settings listed in ORS § 165.540(6). This justification is content-neutral because it aims to protect individuals' interests in knowing when they are being recorded; it is not the government regulating based on what those individuals choose to say. *See* § I.A.1.b, above.

Veritas further argues that these exceptions only "allow for staid, predictable, low-value newsgathering" when they should "tak[e] care not to otherwise cripple effective forms of newsgathering." Pls.' Resp. at 22. But "prohibiting *surreptitious* tape recording of a conversation does not restrict [one's] right to communicate with individuals or to gather news," nor does it "intrude on the press' ability to contact and communicate with anyone it chooses." *State v. Knobel*, 97 Or. App. 559, 563 (1989). The exceptions allowing open recording in these forums constitute a reasonable and content-neutral time, place, and manner regulation.

Because the law "does not distinguish based on the content of the intercepted conversations," *Bartnicki*, 532 U.S. at 526, the open recording provisions must only be "narrowly tailored to serve a significant governmental interest," *Ward*, 491 U.S. at 791. ORS

Page 12 -   REPLY TO PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS

§ 165.540(6) meets that test. Veritas argues that ORS § 165.540(a) and (b) are "overinclusive and not narrowly tailored" because they don't allow the use of concealed recording devices at public or semipublic meetings or classes. Pls.' Resp. at 24. Although there is a lesser reasonable expectation of privacy in these settings, secret recording still carries the risk of unfair surprise. ORS § 165.540(a) and (b) strike a balance by allowing unwarned open recording in these specific settings.

Veritas argues that the law is "substantially overbroad" because it prohibits unwarned recording of conversations that are not in public settings. Pls.' Resp. at 24–25 (citing *Katz v. U.S.*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.")). That an act is in plain view so that the *Fourth Amendment* would not consider the government's gaze to be a search does not mean it is unconstitutional for the State to protect Oregonians' expectations that their conversations on public transit, in parking lots, and in crowded cafes will not be recorded without a specific notice. *See* § I.A.2, above. And the mere fact that a conversation takes place in public and could be overheard by third parties does not mean its participants "knowingly expose" that conversation to the public. These circumstances are distinct from those of ORS § 165.540(6)(a) and (b), where it would be more difficult to "specifically inform[]" every participant in the conversation that they are being recorded.

As to ORS § 165.540(6)(c), Veritas argues that private meetings are "few and far between[.]" Pls.' Resp. at 24. Veritas provides no authority for this assertion and even cites a case involving a private meeting between a reporter and a deputy. *See Knobel*, 97 Or. App. at 561 (acknowledging a § 165.540(6) defense was available). Veritas's cited authority does not show that an unconcealed recording device is not enough for participants in a conversation to typically have known they were being recorded. *See* Pls.' Resp. at 24. Veritas argues that in *Knobel*, the reporter was charged after the deputy asked about an "unconcealed recording

Page 13 -   REPLY TO PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS

device" Pls.' Resp. at 23 (citing 97 Or. App. at 561). But the court held that "a rational trier of fact could have found beyond a reasonable doubt that the recorder was *concealed*" because "only an eighth of an inch of the recorder was visible from the top of defendant's pocket." 97 Or. App. at 565 (emphasis added).

Veritas also contends that "'[t]he test is not whether [a party] was aware that the conversation was being recorded; it is whether the [obtaining party] gave [all parties] the required information.'" Pls.' Resp. at 24 (quoting *Elkins v. Washington Cty.*, No. CIV 06-448-ST, 2007 WL 1342155, at *7 (D. Or. May 3, 2007)). But in *Elkins* specific notice was required because it was a brief encounter, not a private meeting. 2007 WL 1342155, at *6 (citing *State v. Bichsel*, 101 Or. App. 257, 262 (1990)). The exception for private meetings, however, does not require notice, only that the other party knew or should have known. *Id.* at *6 n.1; ORS § 165.540(6)(c). Practically speaking, there is significant overlap between unconcealed devices and whether a participant reasonably should have known they were being recorded.

Veritas argues that ORS § 165.540(6)(c) is overinclusive and not narrowly tailored because the knowledge requirement is more restrictive on a conversation's participants than ORS § 133.721(7) is on eavesdroppers. Pls.' Resp. at 25. As discussed in § I.A.2 above, Veritas's argument relies on its misreading of the eavesdropping statute.

These exceptions are well-tailored to the State's interest in protecting Oregonians from being secretly recorded.

## 2. ORS § 165.540(5)(b) is Constitutional.

ORS § 165.540(5)(b) allows recording of a conversation with a law enforcement officer if, among other things, "[t]he recording is made openly and in plain view of the participants in the conversation." Veritas argues that this exception is content-based because it requires that the obtained conversation include a law enforcement officer. Pls.' Resp. at 21 (citing *Reed*, 576 U.S. at 165). A law that distinguishes among different speakers *may* be a means of controlling

Page 14 -  REPLY TO PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS

content. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010). But ORS

§ 165.540(5)(b) is no such law because it does not create a "distinction[] drawn based on the

message a speaker conveys"; indeed, the exception does not even turn on whether the law

enforcement officer is speaking or being spoken to. *See Reed*, 576 U.S. at 163–64; *see also*

*Turner Broad. Sys.*, 512 U.S. at 658 ("speaker-based laws demand strict scrutiny when they

reflect the Government's preference for the substance of what the favored speakers have to say

(or aversion to what the disfavored speakers have to say)."). The absence of an exception for

other government officials has nothing to do with the substance of the messages they convey. A

conversation with a law enforcement officer and a conversation with the Public Records

Advocate, to use Veritas's example, could involve the same content or viewpoint. *See* Pls.' Resp.

at 21.

      Whether the recording is "made while the officer is performing official duties" also does

not turn on the subject matter of the expression. Veritas argues that because the recording must

be made while the officer is performing official duties, the exception requires examination of the

content of the communications to determine its legality.[10] Pls.' Resp. at 21–22 (citing *Wasden*,

878 F.3d at 1204); *see* ORS § 165.540(5)(b)(B). Here, considering the content of the

conversation or the viewpoints expressed is unnecessary. It would only require a determination

of whether the officer was performing official duties at the time of the recording. An officer may

still be on-duty while having a conversation about any subject matter. An officer could also

express the same view on-duty or off-duty, and only the former would be subject to the open

recording exception. Thus, Veritas's argument that the exception must be content-based because

it turns on whether the officer is performing official duties is unfounded. *See* Pls.' Resp. at 21

n.6.

---

[10] Even if it were otherwise, the need for "inspection of a speaker's message is not dispositive on
the question of content neutrality." *Recycle for Change v. City of Oakland*, 856 F.3d 666, 671
(9th Cir. 2017).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

In addition, Veritas ignores the argument that viewpoint neutrality does not apply here because the government itself is being recorded. *See* Defs.' Mot., § I.B. It is the government's prerogative not to assert its interest in being specifically informed before being recorded, thereby participating in another's expression, in one context but not in others. *See also Citizens United*, 558 U.S. at 341 (collecting cases where "an interest in allowing governmental entities to perform their functions" allowed speech restrictions in protecting public education, penological, military, and federal service entities' functions). In addition, "the First Amendment analysis might be appreciably affected by the type of government official who would be recorded." *Project Veritas Action Fund*, 2020 WL 7350243, at *24 (contrasting "a mayor's speech in a public park" with "a grammar school teacher interacting with her students … on a field trip"). Consequently, the lack of exceptions for other government employees does not make ORS § 165.540 content-based. *See id.*

The law-enforcement exception is not "justified with" reference to the content of the speech for the same reason as the felony crime exception. *See* § I.A.1.b, above. The purpose of the law is to permit recordings for evidentiary purposes given the nature of law enforcement officers' duties, not to encourage *expression* regarding police officers and no others. Law enforcement officers perform unique public safety functions. Allowing recording furthers the government's interest in supporting those public safety functions by allowing individuals to capture evidence of interactions with law enforcement, which sometimes involve life and death, more readily. In addition, there is less risk of unfair surprise when interacting with law enforcement, because "an individual's privacy interests are hardly at their zenith in speaking audibly in a public space within earshot of a police officer." *Project Veritas Action Fund*, 2020 WL 7350243, at *20. ORS § 165.540(5)(b) is content-neutral.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

As explained above, ORS § 165.540(5)(b) allows open recording in circumstances where there is no unfair surprise. Therefore, it is narrowly tailored to the State's interest in protecting Oregonians from being recorded without their knowledge.

Even if the law-enforcement exception were content-based, it would survive any level of scrutiny. A growing body of law recognizes a First Amendment right to openly record law enforcement officers when they perform official duties in public. *See Project Veritas Action Fund*, 2020 WL 7350243, at *15 (noting the First, Third, Seventh, and Eleventh Circuits have recognized a First Amendment right to openly record[11] and no federal court of appeals has rejected such a claim). Given the First Amendment arguably requires that Oregon create a law-enforcement exception, Oregon has a compelling interest in crafting a law that meets such a requirement. *Cf. League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 518 (2006) (Scalia, J., concurring in part) ("If compliance with § 5 [of the Voting Rights Act] were not a compelling state interest, then a State could be placed in the impossible position of having to choose between compliance with § 5 and compliance with the Equal Protection Clause.").

### C. Count III Should Be Dismissed.[12]

#### 1. Count III's Facial Challenge Fails to State a Claim.

As Defendants' opening brief concedes, *Bartnicki* precludes certain applications of § 165.540(1)(e). But even in the First Amendment context, "[a] statute is not invalid simply

---

[11] Last week's First Circuit decision in favor of the ACLU's Martin plaintiffs in *Project Veritas Action Fund* is the only one of these decisions to hold that a state "violates the First Amendment in criminalizing the *secret*, nonconsensual audio recording of police officers discharging their official duties in public spaces." 2020 WL 7350243, at *24 (emphasis added). Veritas's Complaint here does not specifically challenge the law-enforcement exception's provision requiring that such a "recording is made *openly and in plain view* of the participants in the conversation," ORS § 165.540(5)(b)(B) (emphasis added).

[12] Veritas argues that the motion to dismiss would leave intact its Count III with respect to ORS § 165.540(1)(d), which concerns knowingly "[o]btain[ing]" an illegal recording, even if the Court dismissed Veritas's challenge to "us[ing]" such a recording under subsection (e). Veritas's pleadings make no separate allegations regarding its subsection (d) claim, and Defendants' arguments regarding subsection (e) apply with equal force to subsection (d). Accordingly, Count III should be dismissed in its entirety.

Page 17 - REPLY TO PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS

because some impermissible applications are conceivable." *United States v. Schales*, 546 F.3d 965, 971 (9th Cir. 2008). "Instead, the 'law's application to protected speech [must] be "substantial," not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications.'" *Id.* (quoting *Virginia v. Hicks*, 539 U.S. 113, 119–20 (2003)). *Bartnicki* recognized that "the outcome of th[at] case[] does not turn on whether § 2511(1)(c) may be enforced with respect to most violations of the statute without offending the First Amendment." 532 U.S. at 533. In other words, *Bartnicki* does not address Veritas's facial claim.

Veritas argues that "*Bartnicki* does control the content-based status of section 165.540(1)(e)." Pls.' Resp. at 26. *Bartnicki* held that the law at issue was "in fact a content-neutral law of general applicability." 532 U.S. at 526. The as-applied challenge nevertheless succeeded in that case because the broadcaster played no part in making the illegal recording, the recording had great public importance, and there was no legitimate privacy interest at stake. *See* Defs.' Mot. at 15. Here, as Defendants' Motion explains and Plaintiffs' response does not address, the vast majority of applications of ORS § 165.540(1)(e) are well beyond the narrow exception that *Bartnicki* establishes. *Id.* at 16–18. "[B]y looking solely at one half of the equation,"—that some applications of the distribution provision are unconstitutional—"Project Veritas fails to show, as it must, that the unconstitutional applications are 'substantial' relative to the extensive range of applications it does not even challenge." *Project Veritas Action Fund*, 2020 WL 7350243, at *22. For that reason, Veritas's facial challenge fails.

### 2. Veritas Does Not Have Standing to Assert its Count III As-Applied Challenge.

Veritas lacks standing to assert its as-applied challenge to ORS § 165.540(1)(e) because it has no recordings made in violation of ORS § 165.540(1)(c) to distribute other than those it made itself.[13] Veritas argues that "[i]t is sufficient for standing purposes that the plaintiff intends

---

[13] Deposition of James O'Keefe (ECF No. 19-1) at 12:12–15 (testifying no insider collaborations are in Oregon).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff." Pls.' Resp. at 26 (citing *Libertarian Party of Los Angeles County v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013)); *see* Pls.' Resp. at 26. Typically, a plaintiff's intention to violate the law is enough to meet this standard. That's why in *Bowen*, the Libertarian Party of Los Angeles's desire to "use circulators who reside in counties other than Los Angeles County to gather signatures for candidates in that county" in violation of California law was sufficient for standing. *Id.* at 869.

But unlike *Bowen* and other typical cases, Veritas's intention here is not enough; a third party must act as well. For Veritas to "engage in a course of conduct" that would violate ORS § 165.540(e) but be protected by *Bartnicki*, a third-party must send Veritas a recording that the third party made in violation of ORS § 165.540(c) *without* Veritas's assistance. "To prove this kind of harm, [Veritas] must at least show that [it] is likely to [distribute such a recording] in the reasonably foreseeable future if [Oregon] did not [prohibit it]." *Carney v. Adams*, --- S.Ct. ----, No. 19–309, 2020 WL 7250101, at * 9 (Dec. 10, 2020) (holding plaintiff lacked standing). While Veritas has alleged it would consider distributing an Oregon recording if it received one, Veritas provides no reason to conclude that its receipt of an unsolicited recording from Oregon that it would have interest in distributing is "certainly impending." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (dismissing complaint on standing grounds because "'[a]llegations of possible future injury' are not sufficient" to establish injury-in-fact). Veritas solicits such recordings from insiders nationwide without targeting any particular state.[14] Veritas has existed for more than 10 years.[15] It cites only a single recording that it did not help to create in that

---

[14] O'Keefe Dep. at 18:15–20; Project Veritas webpage, "On the Inside? Contact Us Today!" (ECF No. 19-7).

[15] James O'Keefe, *American Pravda* (ECF No. 19-4 at 2) at 15.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

decade—from Georgia.[16] Receipt of a recording from one of the 50 states in the past decade is not evidence that receipt of one from Oregon is certainly impending.

Veritas seeks an advisory opinion regarding whether, in the unlikely event that it receives an unsolicited illegal recording from Oregon, the First Amendment protects its right to distribute it. But standing "require[s] that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney*, 2020 WL 7250101, at *3. Veritas argues that if the Court lacks jurisdiction to rule in this case then Veritas receives a recording, its only remaining choice would be to risk criminal prosecution or not to distribute the recording at all. *See* Pls.' Resp. at 27. But that's not true: if Veritas had a concrete reason to believe it would receive an unsolicited illegal recording—for example, if an "insider" offered Veritas a recording from Oregon—it would have standing to pursue an as-applied challenge as to that recording. Because there is no basis to conclude such a scenario is "certainly impending," Veritas lacks standing to assert its Count III as-applied challenge.

## II. VERITAS'S PLANS FOR FUTURE RECORDINGS ARE INSUFFICIENTLY DETAILED FOR ITS AS-APPLIED CLAIMS TO BE RIPE.

Veritas's as-applied claims are not fit for judicial review and therefore must be dismissed under the prudential ripeness doctrine.[17] Defendants do not contest that Veritas has alleged it wishes to make recordings that would violate ORS § 165.540(c). But the recordings Veritas would allegedly make and distribute are not sufficiently certain and well-defined to allow the Court to undertake a full as-applied analysis under the First Amendment.

---

[16] Decl. of Robert Joel Halderman (ECF No. 36) at ¶¶ 5, 7.

[17] The Motion argues that the Complaint should be dismissed on *prudential* ripeness grounds. However, the First Circuit held a similar case filed by Project Veritas Action Fund "must be dismissed without prejudice for lack of Article III jurisdiction on ripeness grounds." *Project Veritas Action Fund*, 2020 WL 7350243, at *24. Because Article III ripeness is a requirement for subject-matter jurisdiction, the Court may dismiss the Complaint *sua sponte. See United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004) (the "district court ha[s] a duty to establish subject-matter jurisdiction … sua sponte, whether the parties raise[] the issue or not").

Page 20 -   REPLY TO PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS

Veritas's response doubles down on its allegation that it will undertake any number of other investigations beyond the handful of specific investigations articulated in its Complaint. *See* Pls.' Resp. at 29. The topics and settings in which Veritas might record are nearly limitless. *See* Compl. ¶ 31. "This lack of precision [] prompts the concern that it is merely 'conjectural to anticipate' that [the statute] will ever be applied in many of the distinct contexts to which Project Veritas's challenge to [the] measure—by the organization's own terms—extends." *Project Veritas Action Fund*, 2020 WL 7350243, at *23 (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 304 (1979)). Moreover, Veritas's recordings focus on the words of others. Thus, it cannot commit to the specific details of its recordings. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167–68 (2014) (finding claims fit for judicial review under the test for prudential ripeness where petitioners pleaded specific statements they intended to make in future elections). Veritas seeks an injunction absolving itself of responsibility for *any* violation it commits of ORS § 165.540(c), (d), or (e). *See* Complaint ¶¶ 43, 47, Count III (¶ 3) (alleging the law is "unconstitutional … as applied to Plaintiffs"); *see also id.*, Prayer for Relief ¶¶ 1–2.

Veritas does not contest that the question in an as-applied challenge is whether the law "'impose[s] restrictions on speech that are disproportionate when measured against their corresponding privacy and speech-related benefits, taking into account the kind, the importance, and the extent of these benefits, as well as the need for the restrictions in order to secure those benefits.'" Defs.' Mot. at 21 (quoting *Bartnicki*, 532 U.S. at 536 (Breyer, J., concurring)). Veritas does not explain how this multi-factor test could be undertaken without knowing the specific burdens on speech that enforcing the law in a particular instance would impose on Veritas or the burdens on privacy that enjoining its enforcement would impose on others. "[C]oncern about adjudication of hypothetical rather than real disputes looms even larger when one considers the ways in which the First Amendment analysis could be affected by the types of conversations that are targeted." *Project Veritas Action Fund*, 2020 WL 7350243, at *23. Veritas asks this Court to

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ignore these gaps and "judge the outer bounds of the application of [its] decision without knowing the particular contours of the case or controversy," *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1142 n.8 (9th Cir. 2000).

Veritas's as-applied challenges are not fit for judicial review because "Veritas has not sought relief in bringing these challenges that is more congruent in scope to an articulated set of planned investigations." *Project Veritas Action Fund*, 2020 WL 7350243, at *22. For the Court to adjudicate an as-applied challenge, it must know to what facts it is applying the First Amendment. The Court cannot know that here, thus Veritas's as-applied claims are unfit for judicial review under the prudential ripeness doctrine.

## CONCLUSION

The Motion should be granted and the Complaint should be dismissed with prejudice.

DATED December  22 , 2020.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

     *s/ Brian Simmonds Marshall*
BRIAN SIMMONDS MARSHALL #196129
CARLA A. SCOTT #054725
Senior Assistant Attorneys General
SHAUNEE MORGAN #194256
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Brian.S.Marshall@doj.state.or.us
Carla.A.Scott@doj.state.or.us
Shaunee.Morgan@doj.state.or.us
Of Attorneys for Defendants

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000