IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**PROJECT VERITAS et al.**,

                Plaintiffs,                               No. 3:20-cv-01435-MO

v.                                            OPINION AND ORDER

**MICHAEL SCHMIDT,** in his official
capacity as Multnomah County District
Attorney, **et al.,**

                Defendants.

**MOSMAN, J.**,

       Project Veritas and Project Veritas Action Fund (collectively, "Project Veritas") are non-profit national media organizations engaging "almost exclusively in undercover investigative journalism." Compl. [ECF 1] ▯ ▯ 1, 11. They "rely primarily on secret audiovisual recording to obtain stories of public interest about corruption, fraud, waste, and abuse." *Id.* ▯ 20. Project Veritas's stories "have garnered national attention, with many garnering hundreds of thousands of views and some receiving over ten million views." *Id.* ▯ 3. They challenge the constitutionality of various provisions of Oregon's recording statute, Or. Rev. Stat. § 165.540. Multnomah County District Attorney Michael Schmidt and Oregon Attorney General Ellen Rosenblum (collectively, "Defendants") move to dismiss all three of Project Veritas's claims. At oral

argument, I denied Defendants' motion as to Project Veritas's Third Claim challenging the

distribution prohibition. I now GRANT their motion as to the other two claims.

## BACKGROUND

### I.    Oregon's Recording Statute

This dispute centers around Oregon's recording statute, Or. Rev. Stat. Ann. ("Or. Rev.

Stat.") § 165.540 (West 2020). It was enacted in 1955 as an anti-wiretapping law, and amended

in 1959, 1961, 1983, 2001, and 2015 to add the provisions central to the case before me.[1]

Specifically at issue in this case is the law's general prohibition on secret recording in section

165.540(1)(c). Section 165.540(1)(c) generally prohibits recording of conversations "if not all

participants in the conversation are specifically informed that their conversation is being

obtained." This general prohibition is subject to several exceptions, which fall into two

categories: exceptions that allow surreptitious recording of a conversation, and exceptions that

allow open recording of a conversation without specifically informing the participants.

There are two exceptions to the general prohibition on surreptitious recording. First, one

may secretly record in one's home. *Id.* § 165.540(3). Second, one may secretly record "a

conversation during a felony that endangers human life." *Id.* § 165.540(5)(a).

For purposes of this challenge, there are two exceptions that permit open recording. First,

the law-enforcement exception allows a person to record

> a conversation in which a law enforcement officer is a participant, if: (A) The
> recording is made while the officer is performing official duties; (B) The recording
> is made openly and in plain view of the participants in the conversation; (C) The

---

[1] Or. Rev. Stat. § 165.540 was also amended in 2021. *See* 2021 Or. Laws Ch. 357, §§ 1–2.
However, the parties cite and rely on the 2020 version and did not inform the court in any way of the
recent amendments. So, I too cite to the 2020 version for purposes of this opinion. The 2021 amendments
do not alter the language of the 2020 version of the statute in a way that changes its meaning or my
analysis.

conversation being recorded is audible to the person by normal unaided hearing; and (D) The person is in a place where the person lawfully may be.

*Id.* § 165.540(5)(b). Second is what is most simply referred to as the public-meetings exception, which exempts from the general prohibition

> persons who intercept or attempt to intercept with an unconcealed recording device the oral communications that are part of any of the following proceedings: (a) Public or semipublic meetings such as hearings before governmental or quasi-governmental bodies, trials, press conferences, public speeches, rallies and sporting or other events; (b) Regularly scheduled classes or similar educational activities in public or private institutions; or (c) Private meetings or conferences if all others involved knew or reasonably should have known that the recording was being made.

*Id.* § 165.540(6).

Finally, relevant to this case is the prohibition of the distribution of illegally obtained recordings. The distribution prohibition provides that a person may not "[o]btain the whole or any part of a conversation . . . from any person, while knowing or having good reason to believe that the conversation . . . was initially obtained in a manner prohibited by [the general prohibition]," *id.* § 165.540(1)(d), or [u]se or attempt to use, or divulge to others, any conversation, telecommunication or radio communication obtained by any means prohibited by [the general prohibition]," *id.* 165.540(1)(e). A violation of the statute is a Class A misdemeanor. *Id.* § 165.540(8).

## II.    Project Veritas's First Amendment Challenge

Project Veritas wants to engage in undercover journalism that could result in criminal charges under the recording statute. Project Veritas asserts that, based on experience, "announcing their recording efforts has caused individuals to refuse to talk or to even distort their story," hindering their ability to "exercise their First Amendment rights to engage in undercover newsgathering and journalism in Oregon." Compl. [ECF 1] ⁋⁋ 5, 21. In Project Veritas's view, "[o]nly one method allows them to exercise their First Amendment rights safely

and effectively: secret recording." *Id.* ¶ 7. Accordingly, Project Veritas brings this case to challenge the constitutionality of the recording statute.

If not for the recording statute, Project Veritas "would engage in several journalism projects in the state immediately and in the years to come." *Id.* ¶ 27. Specifically, Project Veritas wishes to investigate "the dramatic rise in violent protests in Portland between the police and members of Antifa and other fringe groups." *Id.* ¶ 29. They also seek to "investigate allegations of corruption at the offices of the Oregon Public Records Advocate and the Public Records Advisory Council" in light of the 2019 resignation of the Oregon Public Records Advocate. *Id.* ¶ 28. They seek to conduct such investigations using methods prohibited by the statute. *Id.* ¶¶ 27–29.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Review on a motion to dismiss is normally limited to the complaint itself. If the court relies on materials outside the pleadings to make its ruling, it must treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d); *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). But the court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Ritchie*, 342 F.3d at 908. Here, Project Veritas attaches to their complaint a video exemplar and a narrative document

illustrating their journalism activities. Although neither one ends up affecting my analysis, I may consider both at the motion to dismiss stage.

## DISCUSSION

Project Veritas brings facial and as applied challenges to the recording statute. They contend that the recording statute violates their First Amendment rights in three ways: (1) the general prohibition against secret recording is unconstitutional as a general rule; (2) the general prohibition against secret recording, in light of the felony exception and the law-enforcement exception, unconstitutionally favors some recording of police but disfavors all other recording; and (3) the distribution prohibition impermissibly punishes publishers of information. Compl. [ECF 1] ¶¶ 39–51.[2] I have already decided Project Veritas's challenge to the distribution prohibition can go forward. I now must answer whether the challenges to the general prohibition, considering its exceptions, present tenable constitutional claims.

## I.    Protected Speech

Project Veritas's claims center around their asserted First Amendment right to surreptitiously record. I must first consider whether this activity is protected by the First Amendment. The Ninth Circuit has recognized that the First Amendment protects audiovisual recordings "as recognized organs of public opinion and as a significant medium for the communication of ideas." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1203 (9th Cir. 2018) (alteration accepted) (internal quotation marks and citation omitted). Similarly, the creation of audiovisual recordings is protected as "purely expressive activity" because "the recording process is itself expressive and is inextricably intertwined with the resulting

---

[2] After paragraph 48, the Complaint restarts its numbering at one. For clarity, I cite to the paragraph numbers as if continuous.

recording." *Id.* at 1204 (internal quotation marks and citation omitted). Because the recording statute either directly or indirectly restricts these rights, it must withstand constitutional scrutiny.

## II.    Levels of Scrutiny

In First Amendment cases, the level of scrutiny under which a law is analyzed hinges on whether the law is content based or content neutral. In this case, two doctrines may apply: strict scrutiny or intermediate scrutiny.

If a law is content based, strict scrutiny applies. *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015). Strict scrutiny is the most heightened form of review; to survive, a law must be "necessary to serve a compelling state interest" and "narrowly drawn to achieve that end." *Wasden*, 878 F.3d at 1204 (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). "Strict Scrutiny is 'an exacting test' requiring 'some pressing public necessity, some essential value that has to be preserved; and even then the law must restrict as little speech as possible to serve the goal.'" *Id.* at 1204 (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 680 (1994)). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163. If the law is not facially content based, it may nevertheless be content based if it is justified with reference to content. *Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001). A law that differentiates based on speakers is also content based if speakers are a proxy for content. *Turner*, 512 U.S. at 658.

On the other hand, "regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny because in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue." *Id.* at 642 (internal citation omitted). There are several variations of intermediate scrutiny that come up in First Amendment

cases. For laws regulating conduct that have an incidental burden on speech, the *O'Brien* test

applies. *See, e.g.*, *id.* at 662 (citing *United States v. O'Brien*, 391 U.S. 367 (1968)). Under the

*O'Brien* test, a content-neutral regulation is valid "if it furthers an important or substantial

governmental interest; if the governmental interest is unrelated to the suppression of free

expression; and if the incidental restriction on alleged First Amendment freedoms is no greater

than is essential to the furtherance of that interest." *O'Brien*, 391 U.S. at 377. For speech taking

place in certain forums, courts apply a speech-forum analysis.[3] Under this test, a "time, place, or

manner" restriction is constitutional if it is "justified without reference to the content of the

regulated speech, . . . narrowly tailored to serve a significant governmental interest, and . . .

leave[s] open ample alternative channels for communication of the information." *Ward v. Rock*

*Against Racism*, 491 U.S. 781, 791 (1989) (internal quotation marks and citation omitted).

Narrow tailoring here requires that the law not "burden substantially more speech than is

necessary to further the government's legitimate interests." *Id.* at 799. But "it need not be the

least restrictive or least intrusive means of doing so." *Id.* at 798; *see also Hill v. Colorado*, 530

U.S. 703, 726 (2000) ("[W]hen a content-neutral regulation does not entirely foreclose any

means of communication, it may satisfy the tailoring requirement even though it is not the least

restrictive or least intrusive means of serving the statutory goal."). In other contexts, the Supreme

Court has cited the *Ward* time, place, and manner test, but then proceeded to engage in more of a

balancing test. *See Bartnicki*, 532 U.S. at 521, 526–35; *see also* Bhagwat, *supra*, at 790 (noting

---

[3] Although this analysis seems to have been initially limited to regulations of speech occurring in public forums, *e.g.*, *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 680–81 (1992), it has also been applied, without explanation, to speech in private forums, *see, e.g.*, *City of Ladue v. Gilleo*, 512 U.S. 43, 56 (1994) (applying the time, place, and manner test and striking down a municipal sign ban that restricted sign postings on private properties); *see also* Ashutosh Bhagwat, *The Test that Ate Everything: Intermediate Scrutiny in First Amendment Jurisprudence*, 2007 U. Ill. L. Rev. 783, 790 (2007).

that the Court in *Bartnicki* engaged "in a form of weighted balancing that seemed to strongly elevate free speech interests"). At least one commentator believes the Supreme Court and Courts of Appeals are trending towards a single intermediate scrutiny test in First Amendment cases. Bhagwat, *supra*, at 800–04. Regardless of the precise test being applied, it is clear that for a law to be upheld under an intermediate level of scrutiny it must be content neutral law, serve a significant/important/legitimate interest, and be sufficiently (narrowly, but not perfectly) tailored to that interest.

## III.    Whether the Recording Statute is Content Based

### A.    The General Prohibition

Project Veritas makes two arguments as to why the general prohibition in Or. Rev. Stat. § 165.540(1)(c) is content based. First, they contend the statute is facially content based because on its face, it restricts a particular medium of speech—surreptitious recording of conversations. Pls.' Resp. [ECF 35] at 12–13. I reject this first argument. While it is correct that a medium of speech is generally restricted, that restriction applies across all topics, speakers, and interests. It does not single out any particular viewpoint or subject matter. While it is possible to imagine a statute that regulates a medium of speech as a proxy for a message—say banning mimeographed or photocopied articles as a way of getting at the samizdat in the former Soviet Union—this is not such a case.

 Project Veritas's second but related argument looks to the purported justification or purpose of the statute. They argue that section 165.540(1)(c) is justified by reference to content, *see Bartnicki*, 532 U.S. at 526, because the purpose of the law is to change the content of the recorded conversations. Pls.' Resp. [ECF 35] at 14. By notifying someone you are recording, they contend, you are necessarily changing the content of the conversation because the speaker

will be less candid. *Id.* Defendants, on the other hand, assert the purpose of the recording statute is not to change the content of conversations, but rather to "protect[] Oregonians' right not to be recorded without their knowledge." Defs.' Mot. Dismiss [ECF 34] at 7. Neither side cites any legislative history that discusses the purpose of the statute, nor does there appear to be any. *See State v. Neff*, 265 P.3d 62, 66 (Or. Ct. App. 2011) (en banc).

One way to resolve this argument is to look at who has the burden of proof. If Project Veritas wants to make a claim based on this argument, the burden is on them to show that the law's purpose is what they say it is. They have not done so. In cases like this, the law does not allow a plaintiff to make up a purpose out of whole cloth. Grounded in that, Defendants win. Another way to think about this is, without legislative history, a court is left to determine who has the more plausible explanation of the legislature's purpose. I find it completely implausible that in 1961 the recording statute was amended to include the general prohibition before me as some subtle attempt to influence people's speech while being recorded. So, Project Veritas's argument loses on this ground, too.

The general prohibition is content neutral. Still, I must ask whether the law's exceptions transmogrify it into one that is content based.

### B.    Exceptions to the General Ban

Project Veritas argues that three of the exceptions to the general prohibition are content based: the felony exception, the public-meetings exception, and the law-enforcement exception. [4] These exceptions make distinctions based on speaker identity or the nature of the event being recorded or both. Project Veritas argues that these are impermissible distinctions based on the content of the audio recordings.

---

[4] Project Veritas concedes that the other exception to the general prohibition on surreptitious recording—recording in one's home—is content neutral. *See* Pls.' Resp. [ECF 35] at 12 n.1.

In *Reed*, the Supreme Court found a sign code that imposed more stringent restrictions on some categories of signs was a facially content-based regulation. 576 U.S. at 159. The sign code at issue prohibited the display of outdoor signs without a permit. *Id.* Presumably, this general prohibition did not violate the First Amendment, but several categories of signs were exempted from this requirement, including ideological signs, political signs, and "Temporary Directional Signs Relating to a Qualifying Event." *Id.* at 159–60. Among these categories, ideological signs were treated most favorably, political signs were treated less favorably, and temporary directional signs were treated the least favorably. *Id.* A local church wishing to advertise the time and location of its Sunday services challenged the sign code. *Id.* at 161. The Court rejected the Court of Appeals' analysis that these were only speaker-based and event-based restrictions and therefore content neutral. *Id.* at 169. It found that the sign code's category-based distinctions were not speaker based, although it also reiterated that "laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference." *Id.* at 169–70 (quoting *Turner*, 512 U.S. at 658)). Instead, it found the sign code was content based because the different categories of restrictions were based on the particular message being conveyed: the time and location of a specific event. *Id.* at 170–71.

More recently, in *Wasden*, the Ninth Circuit found an "ag-gag statute" that prohibited "making audio or video recordings of the 'conduct of an agricultural production facility's operations'" without consent was content based because it effectively "prohibit[ed] the recording of a defined topic." 878 F.3d at 1203–04 (quoting Idaho Code § 18-7042(1)(d)).

With these principles in mind, I examine each of the challenged exceptions to the recording statute's general prohibition in turn.

### 1.    Felony Exception

The felony exception permits surreptitious recording during a felony that endangers human life. Project Veritas argues that this exception is content based because it is precisely dependent on the content obtained: a felony that endangers human life. Pls.' Resp. [ECF 35] at 13. Moreover, Project Veritas argues that the justification of the law is content based given the Defendants' statement that the felony exception furthers the important state interest of "gathering evidence to allow the prosecution of a serious crime." *Id.* (quoting Defs.' Mot. Dismiss [ECF 34] at 11). I disagree.

There is no discernable content at issue with this exception. The content obtained via a recording during a felony that endangers human life could include innumerable potential topics, viewpoints, and speakers. While it is true that this exception is triggered by a particular kind of event, that event seems disconnected from any particular type of content. There is also no identifiable category of speakers targeted by this exception that is at all related to any specific message or idea. This is distinguishable from *Wasden*, where every banned recording would have involved a distinct topic. Accordingly, the felony exception is content neutral and does not alter the otherwise content-neutral general prohibition.

### 2.    Public-Meetings Exception

The public-meetings exception allows recording with an unconcealed device in, essentially, various situations where there is a reasonable expectation that the conversations would be recorded. Put another way, it allows recording when there is no, or at least a very diminished, expectation of privacy. It is the broadest exception in the recording statute, capturing settings like sporting events, public speeches, regular educational activities, and even some private meetings.

In their brief, Project Veritas argues that this exception is content based because it allows open recording at "government-favored events" while disallowing open recording in "similarly situated circumstances." Pls.' Resp. [ECF 35] at 22. According to Project Veritas, one example of the law's disparate treatment is that it allows one to "record a celebrity offering makeup tips at a press conference . . . but one may not ask her questions about her recent drug arrest on the crowded streets of Portland without specifically informing her." *Id.* The effect of this exception, so the argument goes, is to inhibit "[s]pontaneous, effective undercover journalism." *Id.* At oral argument, Project Veritas walked away from this argument and conceded that this exception was content neutral.

To the extent Project Veritas is still relying on the arguments in their brief, I disagree. This is a classic time, place, manner exception that allows more speech in forums that are typically used for expressive activities. In no way does the exception mention the *type* of meeting, event, speech, class, or sporting game that must occur for it to apply, precisely because it does not matter. The exception also goes hand-in-hand with the tailoring of the law—where the government's interest in protecting individual privacy is weaker, the law allows open recording. In fact, Project Veritas's own hypothetical highlights this. The proffered celebrity would have a much more heightened sense of personal privacy when interrogated alone on the street than she would at a press conference. And while Project Veritas attempts to inject subject matter into their hypothetical, it is clear the law would not care if the press conference involved the celebrity's recent drug arrest and the sidewalk interrogation was a fan seeking makeup tips. The exception is content neutral.

//

//

3.      **Law-Enforcement Exception**

Finally, the law-enforcement exception allows open recordings of any conversation involving a law enforcement officer performing their official duties. Project Veritas argues this exception impermissibly discriminates based on speaker, "allowing the public to more easily record the police while disfavoring similar recordings of other government agents." Pls.' Resp. [ECF 35] at 21.

At first blush this exception does appear to impermissibly distinguish based on speaker. It is expressly limited to conversations where a law enforcement officer is a speaker in the context of his or her official duties. However, as Defendants argue, government speech is analyzed differently in the First Amendment context. Although neither side cites any precedent for the precise issue in this case—whether a law can allow private citizens to *acquire* government speech more easily than other speech within a statutory scheme that otherwise places restrictions on private speech—there are several contexts in which courts take a different approach in First Amendment cases where the government, as opposed to a private citizen, is the speaker.

First, government speech is generally not subject to First Amendment challenges because when the government speaks, it is free "to select the views that it wants to express." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467–68 (2009). Second, for First Amendment claims brought pursuant to 42 U.S.C. § 1983, courts "have set a high bar when analyzing whether speech by government officials is sufficiently adverse to give rise to a First Amendment retaliation claim" given the competing First Amendment rights of government officials and the importance of allowing them to engage in speech without "interfering with their ability to effectively perform their duties." *Mulligan v. Nichols*, 835 F.3d 983, 989 (9th Cir. 2016). And third, courts treat government speech differently in compelled speech cases because

"[c]ompelled support of government—even those programs of government one does not approve—is of course perfectly constitutional, as every taxpayer must attest." *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 559 (2005) (internal quotation marks). Furthermore, treating government speech differently does not run afoul of the first principles of the First Amendment. The government subjecting *itself* to greater public scrutiny than private actors seems almost the opposite of the harm the First Amendment is designed to protect against. *See, e.g.*, *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 755 (2011) ("[T]here is practically universal agreement that a major purpose of the First Amendment was to protect the free discussion of governmental affairs . . . ." (internal quotation marks and citation omitted)). Moreover, the government, unlike private citizens, is accountable to the political process. *See, e.g.*, *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 208 (2015) (reasoning that the government's freedom to speak without being barred by the First Amendment "in part reflects the fact that it is the democratic electoral process that first and foremost provides a check on government speech").

Given the distinct nature of government speech, I find it is appropriate to treat the acquisition of government speech under the recording statute differently.[5] That the recording

---

[5] *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020), is not to the contrary. In *Barr*, the Supreme Court was faced with a statute that barred all robocalls to cell phones, except for robocalls to collect government debt. *Id.* at 2346. The Supreme Court rejected the Government's argument that this was a content-neutral, speaker-based distinction and instead found it was content based because it "favor[ed] speech made for collecting government debt over political and other speech." *Id.* at 2346–47. Further, the exception "undermine[d] the credibility of the Government's interest in consumer privacy." *Id.* at 2348 (internal quotation marks and citation omitted). The Court did not mention government speech at all, likely because robocalls regarding government debt would come from private, debt-collecting entities. The law-enforcement exception here is distinct from the government-debt robocall exception. It is specifically aimed at government speech and first principles of the First Amendment are not offended.

statute facilitates some of its own speech through the law-enforcement exception does not render content based the otherwise content-neutral general prohibition.

### C.    Conclusion

I find both the recording statute's general prohibition and its exceptions are content neutral. The law does not require nor prohibit recording of particular ideas or points of view. Those wishing to record conversations are free to record any type of conversation, within the parameters of the various content-neutral exceptions. Therefore, to be constitutional the law must only withstand intermediate scrutiny.

## IV.    Application of Intermediate Scrutiny

### A.    Which Test Applies

As I previously discussed, there are various versions of intermediate scrutiny that apply depending on how the challenged law impacts protected speech. The recording statute directly restricts expressive activity: surreptitious recording. *See Wasden*, 878 F.3d at 1204. It is not a law that regulates conduct with only incidental impacts on speech. Thus, the *O'Brien* test is inapplicable. While most cases applying the time, place, manner test involve regulation of speech on public forums, as I previously noted, this test has also been applied to regulations of speech on private property. *See, e.g.*, *Gilleo*, 512 U.S. at 56. So, as the parties seem to indicate in their briefing, the time, place, manner test is likely applicable, at least in part, to this case. In any event, the intermediate scrutiny analysis is very similar irrespective of the precise test applied: I must examine whether the government has asserted a significant interest to regulate, and then whether the law is sufficiently tailored to that interest. The latter question requires me to look at whether the law is underinclusive or overinclusive. For intermediate scrutiny, some amount of under or overinclusiveness does not automatically render the law invalid. *See, e.g.*, *Ward*, 491

U.S. at 799 (narrow tailoring for the time, place, and manner test requires that the law does not "burden substantially more speech than is necessary to further the government's legitimate interests").

### B.    Application of Intermediate Scrutiny

#### 1.    Governmental Interest

The asserted government interest is safeguarding individual privacy. Defs.' Mot. Dismiss [ECF 34] at 7. Project Veritas agrees that "privacy is an important governmental interest." Pls.' Resp. [ECF 35] at 19. And the Supreme Court has held "[p]rivacy of communication is an important interest." *Bartnicki*, 532 U.S. at 532. In fact, "the fear of public disclosure of private conversations might well have a chilling effect on private speech." *Id.* at 533.

#### 2.    Tailoring

The question of tailoring requires me to look at whether the law is underinclusive or overinclusive to achieve the government's stated interest. Project Veritas argues that the recording statute "is not narrowly tailored due to underinclusiveness" in two ways. Pls.' Resp. [ECF 35] at 18. First, it "restricts one from obtaining or using most of one's own conversations via audio device without notice while permitting the acquisition of the same, exact conversation in most other media without notice." *Id.* Second, it "regulat[es] how one obtains his own conversation far more strenuously than how one obtains the conversation of others." *Id.* I address each argument in turn.

I am unpersuaded by their first argument. It is unclear what "other media" could be used to obtain conversations under this statute, and Project Veritas gives no examples. Further, it makes sense to treat the real-time quality of audio recording differently in terms of the

government's interest in protecting individual privacy. I thus find the statute is not impermissibly underinclusive in this regard.

Project Veritas's second argument as to tailoring requires me to interpret and compare another Oregon law, the eavesdropping statute, which states:

> any person who willfully intercepts, attempts to intercept or procures any other person to intercept or attempt to intercept any wire or oral communication where such person is not a party to the communication and where none of the parties to the communication has given prior consent to the interception, is guilty of a Class A misdemeanor.

Or. Rev. Stat. § 165.543(1) (2019). "Intercept" is defined as "the acquisition, by listening or recording, of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical, or other device." Or. Rev. Stat. § 133.721(5). "Oral communication" is defined in part as any "oral communication, other than a wire or electronic communication, uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." *Id.* § 133.721(7)(a).

Because the eavesdropping statute is essentially limited to scenarios where the communicator has an expectation of privacy, Project Veritas argues that it is easier to record a third party's conversation than it is to record one's own conversation. Pls.' Resp. [ECF 35] at 18–19. This dichotomy, according to Project Veritas, makes the recording statute underinclusive because it is more restrictive of speech in situations where there is a lower expectation of privacy. *Id.* at 16–17, 19. Project Veritas's argument rests on interpreting the recording statute as governing only the recording of conversations where the recorder is a party. I begin my analysis with this underlying premise.

Looking at the plain language of the general prohibition, as well as its context, I reject Project Veritas's reading of the recording statute. The general prohibition in section

165.540(1)(c) prohibits a person from "obtain[ing] or attempt[ing] to obtain the whole or any part of *a conversation . . . if not all participants in the conversation* are specifically informed that *their conversation* is being obtained." (emphasis added). There is no requirement that the person who seeks to obtain the conversation be a party to the conversation. In fact, the plain language belies any such requirement. The prohibition does not say "*my* conversation" or "*your* conversation"; it says, "*the* conversation." The exceptions to the general prohibition also support this reading. For example, the felony exception allows surreptitious recording "during a felony that endangers human life." Or. Rev. Stat. § 165.540(5)(a). There is no mandate that the recorder be a victim of, party to, or otherwise involved with such an event. Similarly, the public-meetings exception specifically includes things like "public speeches, rallies and sporting . . . events." *Id.* § 165.540(6)(a). Those are not the types of settings where it is likely the recorder would be in a direct conversation with the speaker—it is much more likely that they would be an observer to a conversation between the speaker and a large group or the speaker and another individual.

Still, if this reading of the recording statute renders the eavesdropping statute meaningless, then Project Veritas's argument may have some merit. I find it does not. The eavesdropping statute prohibits one to "intercept" a third party's oral communication. *Id.* § 165.543. "Intercept" is defined as "the acquisition, by *listening or recording* . . . ." *Id.* § 133.721(5) (emphasis added). The recording statute, on the other hand, does not cover listening, only recording. Under the recording statute, one may lawfully listen to the secrets told by a celebrity to her friend while whispering on a sidewalk, but that same conduct might be unlawful under the eavesdropping statute. Thus, while the recording statute may have the effect of limiting the scope of the eavesdropping statute, it does not render the eavesdropping statute entirely superfluous. *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 144

(2001) ("[T]his Court has not hesitated to give effect to two statutes that overlap, so long as each reaches some distinct cases."); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) ("Redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, a court must give effect to both." (internal citation omitted)); *State v. Cloutier*, 261 P.3d 1234, 1250 (Or. 2011) ("We wish to be clear that the fact that a proposed interpretation of a statute creates some measure of redundancy is not, by itself, necessarily fatal" and "may be what the legislature intended."). Accordingly, I find the statute is not impermissibly underinclusive in this regard either.

In their brief, Project Veritas also argues the recording statute is not narrowly tailored because it is overinclusive. Pls.' Resp. [ECF 35] at 24. As to the public-meeting and law-enforcement exceptions, they argue that, despite there being diminished privacy interests in the settings captured by these exceptions, any recording must be done openly or with an unconcealed recording device. *Id.* They also argue the law is overinclusive in that it prohibits surreptitious recording "in places where one voluntarily exposes communications to others" and therefore "lacks a reasonable expectation of privacy." *Id.* However, at oral argument Project Veritas walked away from this theory, instead arguing that—given the interplay with the eavesdropping statute—the recording statute protected the *least* the conversations where the privacy value is higher and protects the *most* the conversations where the privacy value is lower.

Project Veritas is correct that there are some possible applications of the recording statute that would be overinclusive. That is, there are some potential conversations that despite a very diminished privacy interest in the content of that conversation, a person would be prohibited from recording without first specifically informing the participants. But the likelihood of the statute applying in such scenarios appears to be scant. For instance, at oral argument Defendants

indicated that an argument between two people on the sidewalk may constitute a meeting and thus open recording without specifically informing would be permitted under the public-meetings exception. In fact, Defendants indicated that the public-meetings exception would cover many scenarios beyond just the briefest of encounters. While I find this argument to be a somewhat surprising reading of the text, I am satisfied that any potential overinclusiveness of the statute would be very limited. And of course, because I am applying intermediate scrutiny and not strict scrutiny, the law need not be perfectly tailored.

To the extent the time, place, manner test applies to some applications of the recording statute, it is also necessary to ask whether the law "leave[s] open ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791 (internal quotations marks and citation omitted). This presents a framing question: must there be ample alternative channels for Project Veritas to surreptitiously record, to record generally, or to simply communicate the message they wish to communicate? I find the appropriate inquiry is whether there are alternative channels for Project Veritas to communicate the message they wish to communicate. *Menotti v. City of Seattle*, 409 F.3d 1113, 1138–39 (9th Cir. 2005) ("The Supreme Court generally will not strike down a governmental action for failure to leave open ample alternative channels of communication unless the government enactment will foreclose an entire medium of public expression across the landscape of a particular community or setting." (quoting *Ctr. for Fair Pub. Policy v. Maricopa County*, 336 F.3d 1153, 1170 (9th Cir. 2003)); *see also Hill*, 530 U.S. at 729 (explaining that an 8-foot restriction left "ample room to communicate a message," since "[s]igns, pictures, and voice itself can cross an 8-foot gap with ease"). For example, Project Veritas says they wish to "investigate allegations of corruption at the offices of the Oregon Public Records Advocate and the Public Records Advisory Council." Compl. [ECF 1] ¶ 28. So,

the question is whether there are ample alternative ways they can do so—aside from undercover, investigative journalism in situations not covered by the statute's exceptions. I find that there are. Project Veritas may record any subject matter at any time if they inform the persons in the conversation. They may always openly record official law enforcement conduct. And they may always openly record public meetings and similar situations—an exception that covers a broad array of settings. They may also engage in undercover investigations without audio recording. There are many alternatives to surreptitious recording, and, especially in light of the contravening First Amendment and privacy interests at play, those alternatives are adequate for Project Veritas to communicate their desired message. I therefore find this factor is satisfied.

### C.    Conclusion

I find the recording statute satisfies intermediate scrutiny because the statute does not burden substantially more speech than necessary to serve the government's interest in safeguarding individual privacy.[6]

## V.    Compelled Speech Argument

Finally, Project Veritas argues that the recording statute compels speech by, in most cases, requiring one wishing to record to specifically inform those they would be recording. Pls.' Resp. [ECF 35] at 15. This requirement, so Project Veritas asserts, "compels individuals to convey a particular message" that "hobbles newsgathering protected by the First Amendment." *Id.* I disagree.

This is a clear case of compelled speech incidental to valid regulation. *See Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 62 (2006) (requiring a law school to send

---

[6] My opinion does not cover the 2021 amendments to the recording statute. Although on their face they seem squarely within my decision that the law is content neutral and sufficiently tailored to the government's important interest, I do not go so far as to so hold today.

scheduling e-mails for military recruiters was incidental to the Solomon Amendment's valid regulation of conduct and therefore not impermissible compelled speech). Furthermore, the requirement to specifically inform is not a requirement to convey a particular message. It is merely a notice requirement.

## CONCLUSION

For the reasons stated herein, I GRANT the Defendants' Motion to Dismiss [ECF 34] as to Project Veritas's Claims One and Two.

IT IS SO ORDERED.

DATED this  10  day of August, 2021.


*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge

22 – OPINION AND ORDER